Donald HARNISH d/b/a Ads of West Florida, et al., Plaintiffs-Appellees,

v.

MANATEE COUNTY, FLORIDA, Defendant-Appellant.

Nos. 84-3859, 84-3872.

United States Court of Appeals, Eleventh Circuit.

March 10, 1986.

As Corrected May 12, 1986.

Ralph Artigliere, A.H. Lane, Lakeland, Fla., for defendant-appellant.

A. Lamar Matthews, Jr., Williams, Parker, Harrison, Dietz & Getzen, Theodore C. Eastmoore, Terri Jayne Salt, Sarasota, Fla.,

for amicus curiae Manatee Beautification Project, et al.

James R. Betts, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, Fla., for plaintiffs-appellees.

## CORRECTED OPINION

Before VANCE, Circuit Judge, HENDERSON,[*] Senior Circuit Judge and LYNNE,[**] Senior District Judge.

LYNNE, Senior District Judge:

Concluding that we have jurisdiction of appeal Number 84–3872, we review the district court's March 30, 1984, 597 F.Supp. 601, order declaring Section B3d of Ordinance 81–23, as amended by Ordinance 82–24, enacted by Manatee County, Florida, unconstitutional on the ground that it contravenes the First Amendment and enjoining its enforcement. We reverse.

## JURISDICTION

Following is a chronology of the events relevant to the question of jurisdiction:

1. On March 30, 1984, the district court entered the judgment complained of.

2. On April 6, 1984, appellees (plaintiffs), pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, filed and served their motion to alter or amend such judgment.

3. Thereafter, counsel for appellant (defendant) made numerous oral and written inquiries of the clerk's office as to whether any action had been taken on such motion and on each occasion received a negative reply.

4. On October 16, 1984, counsel for defendant wrote to the court inquiring as to the status of the pending motion but received no response thereto.

5. On or about November 28, 1984, counsel for defendant communicated with the court by telephone to determine when action would be taken on such motion.

6. On December 3, 1984, counsel for defendant received from the clerk of the court in an envelope postmarked November 30, 1984, a copy of the Rule 59(e) motion, endorsed "Denied" by the court on August 20, 1984. Prior to receipt of the endorsed copy thereof, counsel for the respective parties had no notice of the court's action thereon.

7. On December 5, 1984, defendant filed its notice of appeal which was docketed in this court as Appeal Number 84–3859.

8. On December 5, 1984, defendant filed its motion to vacate and reenter the order denying the Rule 59(e) motion, which motion was granted by the district court on December 11, 1984.

9. On December 13, 1984, pursuant to Rule 4(a)(4) of the Federal Rules of Appellate Procedure, defendant filed a new notice of appeal which was docketed in this court as Appeal Number 84–3872.

10. On March 21, 1985, a panel of this court dismissed Appeal Number 84–3859 for lack of jurisdiction.

11. On May 3, 1985, the panel granted defendant's petition for rehearing, vacated its order of dismissal, carried the question of the court's jurisdiction with the case, and consolidated Appeals Number 84–3859 and 84–3872.

By virtue of the provisions of Rule 77(d)[1] of the Federal Rules of Civil

---

[*] See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

[**] Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

1. (d) Notice of Orders or Judgments. Immediately upon the entry of an order or judgment the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 5 upon each party who is not in default for failure to appear, and shall make a note in the docket of the mailing. Such mailing is suffi-

Procedure, and Rule 4(a)[2] of the Federal Rules of Appellate Procedure, it is at once apparent that this court acquired no jurisdiction of Appeal Number 84–3859. With respect to Appeal Number 84–3872, however, matters stand differently. By availing itself of the escape valve provided by Rule 60(b)[3] of the Federal Rules of Civil Procedure in vacating and reentering its order on the Rule 59 motion, the court avoided the manifest injustice worked by a rigid application of the provisions of Rule 77(d) to the above-recited facts.

We are content to quote with full approval Judge Wisdom's language for the court in *Fidelity & Deposit Co. v. USAFORM Hail Pool, Inc.*, 523 F.2d 744, 751 (5th Cir.1975):

> In these circumstances, more is involved than the mere failure of the clerk to discharge his duty under F.R.Civ.P. 77(d). There was no prejudice to either side, because neither side knew of the entry of judgment. Counsel promptly filed notice of appeal after the action of the district court vacating and reentering its judgment. Indeed, counsel at all times acted diligently, and relied upon an express assurance from the district court that they need not continue their inquiries. The case had been fought long and hard, and an appeal by one side or the other was virtually certain. We hold that the trial court acted properly in vacating and reentering its judgment under F.R.Civ.P. 60(b).

The ineluctable conclusion is that we have jurisdiction of appeal Number 84–3872 and thus turn to the merits.

## THE MERITS

In the court below plaintiffs, an individual engaged in the business of leasing or renting portable and temporary signs, and merchants who used such signs to promote their products for sale or to advertise their businesses, leveled their attack primarily upon Section B3d of Manatee County Sign Ordinance 81–23, as amended by Ordinance 82–24, on constitutional grounds. The defendant insisted that the total prohibition of such signs was a proper exercise of its police power to further its interests in aesthetics and traffic safety and was not violative of the First Amendment.

Manatee County is located on the West coast of Florida, South of Tampa, between the Manatee River and the Gulf of Mexico. Its unincorporated area, governed by a Board of County Commissioners, is essentially a rapidly growing retirement and tourist oriented community, characterized by an aesthetically appealing and fragile environment.

Sign Ordinance 81–23, November 17, 1981, was enacted following a series of public hearings and workshops sponsored by the commissioners in which members of the public as well as representatives of the sign industry were participants. One of the key issues dealt with in these hearings was whether portable signs should be banned. As was recognized by the district court the primary complaint of the local residents was that portable signs are inher-

---

cient notice for all purposes for which notice of the entry of an order is required by these rules; but any party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers. Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure.

2. (a) Appeals in Civil Cases.
(1) In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from; . . . .

3. (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment. . . .

ently ugly.[4] The board responded by providing in Section B3d of Ordinance 81–23, which was unaffected by amendatory Ordinance 82–24, that "[N]o portable sign or changeable-copy temporary sign shall be erected or displayed in Manatee County." [5]

The district court subjected the total ban of such signs, in the context of the protection of commercial speech afforded by the First Amendment, to the analysis required by the Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), summarized by the plurality in *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 507, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800 (1981) in the form of a four part test:

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

We agree that the record supports its conclusion that Section B3d of the Ordinance successfully passes tests (1), (2), and (3).

Turning to the holding of the lower court that it failed test (4), we are guided by significant developments in First Amendment jurisprudence that have occurred within this decade, dealing with speech communicated by signs.[6] The polestar case *Metromedia, supra,* and its progeny, *Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984), and *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984), control our disposition of this appeal. We note that the opinions in the latter two cases came down two and three months, respectively, after the district court entered its judgment.

In our view, these three cases stand for three clear principles:

1. Aesthetics is a substantial governmental goal which is entitled to and should be accorded weighty respect;

2. The governmental entity charged with the responsibility of protecting the environment must be given discretion in determining how much protection is necessary and the best method of achieving that protection; and

3. Although any regulation of speech is capable of being narrowed to some extent, the Constitution does not mandate speculation as to how restrictions could be redrafted as long as the restriction is narrowly tailored to achieve the aesthetic goal[7] and

---

4. An examination of the forty-nine photographs of portable and changeable copy signs appearing in the record confirms an unsightly visual cluster.

5. Portable sign is defined in the Ordinance at Section D2 as:

> Any sign which is manifestly designed to be transported, including by trailer or on its own wheels, even though the wheels of such sign may be removed and the remaining chasis [sic] or support constructed without wheels is converted to an A or T frame sign or attached temporarily or permanently to the ground since this characteristic is based on the design of such a sign.

> Changeable copy sign is defined in the same section as:

An Integral part of a sign not covering more than 65% of the total sign area and design so as to readily allow the changing of its message by removable letters, panels, posters, etc. Unless otherwise specifically provided, all signs permitted by this Ordinance may also be changeable copy signs.

6. We employ the word "signs" in its generic sense to refer to speech communicated visually to advertise products or services, such as billboards, posters and placards.

7. In *Metromedia,* writing for the plurality, Justice White observed: "If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." 453 U.S. at 508, 101 S.Ct. at

alternative means of communication remain available.

 Guided by the teachings of *Vincent* and *Community for Creative Non-Violence,* we hold that in analyzing the constitutionality of a restriction on commercial speech it should first be determined whether the governmental goal is an appropriate and substantial one. Having determined that it is, the next step is scrutiny of the regulation to see whether the means chosen advance the goal. If the means reasonably advance the goal and there is no evidence in support of a finding that less restrictive means are available, the court should not attempt to speculate as to whether less restrictive means exist. Rather, analysis should be limited to whether the means are reasonably and narrowly drawn to further the objective.

 Having determined that the total ban of portable signs reasonably advanced the governmental goal of protecting the aesthetic environment of Manatee County, and the record being bare of evidence from which it might be inferred that less restrictive means existed to accomplish the objective, the district court erred in speculating that they were accessible. In *Community for Creative Non-Violence,* the Supreme Court admonished:

> We do not believe, however, that either *United States v. O'Brien* [391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968)] or the time, place and manner decisions assign to the judiciary the authority to the Park Service as the manager of the nation's parks or endow the judiciary with the competence to judge how much protection of park lands is wise and how that level of conservation is to be attained.

104 S.Ct. at 3072.

Since we hold that on this record the prohibition of portable signs to eliminate

---

the aesthetic blight passed muster under the First Amendment, we have no occasion to address the holding of the district court that less restrictive means would accomplish the safety objective. We, therefore, reverse, direct the district court to vacate its judgment and injunction of March 30, 1984, and remand for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED with directions.

---

2893. While five separate opinions were filed by the Court, it is clear that a total ban on commercial billboards did not offend the First Amendment in the eyes of seven of the Justices.