**James G. MESSER, Plaintiff–Appellant,**

v.

**CITY OF DOUGLASVILLE, GEORGIA, a political subdivision of the State of Georgia, Defendant–Appellee.**

**No. 91–8941.**

United States Court of Appeals, Eleventh Circuit.

Oct. 22, 1992.

David H. Flint, Mark W. Forsling, Schreeder Wheeler & Flint, Atlanta, Ga., for plaintiff-appellant.

Joel Eugene Dodson, Dodson & Emerson, Douglasville, Ga., Frank E. Jenkins, III, Kirk Randall Fjelstul, Mary Frances O'Malley, Atlanta, Ga., for defendant-appellee.

Before DUBINA, Circuit Judge, and HILL and CLARK, Senior Circuit Judges.

CLARK, Senior Circuit Judge:

This case concerns the constitutionality of various aspects of the sign ordinance of the City of Douglasville. For the reasons stated below, we affirm the district court in finding the ordinance constitutional.

## I. FACTS AND PROCEDURAL BACKGROUND

The plaintiff, James Messer, owns an automobile paint and body shop within the historic district of Douglasville, Georgia. In 1988, he leased rights to construct a billboard on his property to Adams Outdoor Advertising of Atlanta, Inc. ("Adams") an outdoor advertiser, Jimbo Displays, Inc. ("Jimbo") and Holland Outdoor Displays, Inc. ("Holland") companies that construct

and erect outdoor advertising signs, or billboards. Jimbo obtained a permit from the City of Douglasville for an off-premise billboard on a specific site. The permit was to expire on August 13, 1989. Jimbo and Holland then erected the billboard but 30 feet off the site approved by the city.

On April 17, 1989, the City of Douglasville enacted a sign ordinance prohibiting off-premise signs in the historic district of Douglasville. Subsequent to the enactment of the ordinance, the city became aware that the sign on Messer's property was not at the approved site. It informed Jimbo and Holland that the existing sign was not permitted and therefore could not continue in existence as a non-conforming sign. A new permit could not be issued because of the new ordinance.

Jimbo and Holland requested a hearing before the Board of Adjustments and Appeals, asking that the sign be permitted. The Board affirmed the decision of the building officer denying the permit on April 6, 1990. Two months later, on July 10, 1990, Adams contracted with Jimbo and Holland to purchase the sign located on Messer's property, and entered into a lease agreement with Messer contingent on the results of this action.

Two days later, on July 12, 1990, Messer, Holland, Jimbo and Adams filed this § 1983 suit against the City of Douglasville, alleging the prohibition of off-premise advertising in the historic district of the City of Douglasville and other aspects of the City's sign ordinance violates the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. Pursuant to a subsequent consent order, the district court dismissed Adams, Jimbo and Holland with prejudice, leaving Messer to prosecute this action alone.

Messer challenged five aspects of Douglasville's sign ordinance. The relevant portions of the Douglasville sign ordinance are set out in the margin *infra*. First, Messer argued that the section of the ordinance allowing only on-premise signs and disallowing off-premise signs in the historic district of Douglasville impermissibly favored commercial over noncommercial speech in that district. Second, he argued that because an ordinance covering the entire city of Douglasville allowed exemptions for certain types of signs from the permit requirements and not others, it was not content neutral in its regulation of noncommercial speech. Third, he asserted that the temporary permit provisions mandating cash bonds from persons seeking to put up temporary signs favored commercial over political speech. Fourth, he contended that the portable display provisions of the ordinance violated the First Amendment. Finally, he argued that the variance powers invested in the city's Board of Appeals and Adjustments violated due process.

In an order dated June 26, 1991, the district court granted summary judgment to the city on the first issue. It held that the ordinance did not impermissibly favor commercial over non-commercial speech by allowing on-premise signs but not off-premise signs. The court found that Messer did not have standing to challenge the variance powers of the Board of Appeals, as he suffered no real injury, and had not asked the Board for a hearing. The only hearing that took place had been requested by Mr. Holland on behalf of Jimbo and Holland, the billboard corporations.

In an order filed September 25, 1991, the district court granted summary judgment to the City on the remaining issues. It found that the exemptions to the permit requirements did not violate the First Amendment because they were not *restrictions* on commercial speech. The temporary permit provisions were also constitutional as they were not substantially broader than necessary to achieve the government's aesthetic interest in prompt removal of the signs. The portable display provisions were also constitutional as they were rationally related to the government's interest in the aesthetics of the city.

## II. DISCUSSION

### A. *Off-premise signs*

■ The Douglasville sign code prohibits

off-premise signs [1] throughout the historic district of the City of Douglasville,[2] and in various specific locations.[3] In addition to challenging the ordinance relating to off-premise signs in the Historic District, Messer argues that the regulations in Secs. 26-7, 26-8(b)(6) and (c)(3), (5), (6), (9) and (10) of the Douglasville Code unconstitutionally favor commercial over noncommercial speech.

### 1. The Historic District of Douglasville

There is a complete ban on off-premise signs in the historic district in the City of Douglasville. Appellant Messer argues that this ordinance favoring on-premise

over off-premise signs also favors commercial speech over noncommercial speech, thus violating the First Amendment as interpreted by *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).

The *Metromedia* plurality held that regulation favoring on-site commercial advertising over off-site commercial advertising was permissible, but regulation favoring on-site commercial over non-commercial speech was impermissible. *Metromedia*, 453 U.S. at 511-12, 101 S.Ct. at 2894-95. A landowner or commercial enterprise has much more significant interest in identifying or advertising its own business or prod-

**1.** The City of Douglasville, Ga.Code § 26 (1989) states:

**Sec. 26-4. Definitions**

*Off-premise advertising sign:* A sign which directs attention to a building, profession, product, service, activity, or entertainment not conducted, sold, or offered on the property upon which the sign is located.

*On-premise sign:* A sign which directs attention to a building, profession, product, service, activity, or entertainment conducted, sold, or offered on the property upon which the sign is located.
....

*Sign:* Any name, identification, description, display, illustration, or device which is affixed to or represented directly or indirectly upon the exterior of a building, structure, or land in view of the general public which directs attention to a product, place, activity, person, business or institution.

**2. Sec. 26-28. Prohibited signs.**

The following signs are prohibited within the Douglasville Historic District unless specifically permitted as a temporary sign:
....
(7) Off-premise or separate use signs.

**3. Sec. 26-7. Prohibited signs.**
....
(9) No off-premise sign shall be located within three hundred (300) feet of any officially designated historical site or monument, except signs pertaining to that particular site.

**Sec. 26-8. Special regulation by type of sign.**
(b) *Freestanding on-premise signs*
....
(6) *Height Requirements:*
The height of all on-premise free-standing signs at their highest point above the level of the ground shall not exceed fifty (50) feet; provided; however, that a sign located on property adjacent to or within five hundred (500) feet of a federal interstate highway which advertises a product or service of spe-

cific interest to the motoring public, such as automobile service stations, restaurants and motels, may be seventy (70) feet at its highest point; however, if the ground is lower than the level of the adjoining street pavement, then a sign may be raised so as to be no more than twenty-five (25) feet above the level of the pavement. The level of the ground shall not be altered in such a way as to provide additional sign height. The height of all wall, canopy and roof signs at their highest point above ground level shall be as provided by the standards of the applicable zoning district.

(c) *Off-premise signs in general:*
....
(3) *Height above interstate grade.*
All signs adjacent to the interstate highway right-of-way shall be a minimum of ten (10) feet above the adjacent interstate pavement measuring from the lower portion of the sign face. Signs shall not exceed thirty (30) feet in height. Two (2) signs in the same location (back to back) or in a "V" formation shall be the same height above the interstate surface.
....
(5) ... Only one sign on-premise or off-premise shall be allowed per lot frontage where a business, profession, product, service, activity, or entertainment is conducted, sold, or offered.
....
(6) *Spacing on the interstate.*
Sign locations on property adjacent to the interstate highway right of way shall be no less than one thousand (1000) feet apart, measured from the two (2) closest points.
....
(9) *Marsh area prohibitions.*
No sign shall be placed in or obstruct the view of marshlands.
(10) Signs shall not be placed within two hundred (200) feet of the property line of a bona fide residence, church, school, park or public building, as measured by the two (2) closest points.

ucts than in advertising the products of others. Thus, a governmental entity may restrict the landowner's interest in advertising the products of others in the interests of aesthetics and safety, while leaving the landowner's interest in advertising its own business intact. However, this does not justify disallowing noncommercial billboards where commercial billboards are allowed. The court stated:

> The fact that the city may value commercial messages relating to onsite goods and services more than it values commercial communications relating to offsite goods and services does not justify prohibiting an occupant from displaying its own ideas or those of others.
>
> ....
>
> Insofar as the city tolerates billboards at all, it cannot choose to limit their contents to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages.

*Metromedia,* 453 U.S. at 513, 101 S.Ct. at 2895.

The Court, however, did not distinguish between onsite and offsite *noncommercial* messages. Thus, it did not directly address the question now before us: whether a regulation allowing onsite noncommercial signs while denying offsite noncommercial signs would be constitutionally permissible.

We must first decide whether such an ordinance seeks to regulate speech according to its content. It is well settled that "the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others." *Members of City Council v. Taxpayers for Vincent,* 466 U.S. 789, 804, 104 S.Ct. 2118, 2128, 80 L.Ed.2d 772 (1984). In *Vincent,* the Court ruled the sign ordinance at issue "viewpoint neutral" as

> [T]here is not even a hint of bias or censorship in the City's enactment of enforcement of this ordinance. There is no claim that the ordinance was designed to suppress certain ideas that the City finds

distasteful or that it has been applied to appellees because of the views that they express. The test of the ordinance is neutral—indeed it is silent—concerning any speaker's point of view.

*Vincent,* 466 U.S. at 804, 104 S.Ct. at 2128 (citations omitted).

We find that the City of Douglasville's sign ordinance prohibiting off-premise billboards is similarly viewpoint neutral. It regulates signs not based on the viewpoint of the speaker, but based on the location of the signs. There is no claim of bias, censorship or preference regarding a speaker's point of view. The ordinance does not favor commercial over non-commercial speech; neither does it favor non-commercial over commercial speech. Contrary to Messer's argument, there is simply no basis for equating on-premise signs with commercial speech, and off-premise signs with noncommercial speech. A noncommercial enterprise would be able to put up a sign bearing a noncommercial message as long as it relates to any activity on the premises. Similarly, a commercial enterprise would be able to put up a sign bearing a noncommercial message which related to any activity on the premises. For example, an auto mechanic's garage would be able to put up a noncommercial message relating to the recycling of used motor oil. *Accord Wheeler v. Commissioner of Highways,* 822 F.2d 586, 591 (6th Cir.1987), *cert. denied,* 484 U.S. 1007, 108 S.Ct. 702, 98 L.Ed.2d 653 (1988) (a distinction between onsite and offsite noncommercial signs is constitutionally permissible); *National Advertising Co. v. Chicago,* 788 F.Supp. 994, 997–98 (N.D.Ill.1991) ("the distinction between on-site and off-site advertising is not aimed toward the suppression of an idea or viewpoint"); *see Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 295, 104 S.Ct. 3065, 3069–70, 82 L.Ed.2d 221 (1984) (general ban on camping in park upheld); *Heffron v. International Soc. for Krishna Consciousness, Inc.,* 452 U.S. 640, 648–49, 101 S.Ct. 2559, 2564–65, 69 L.Ed.2d 298 (1981) (regulation requiring all dissemination of ideas to be made from fixed locations within state fair upheld); *cf. National Advertising Co. v. Orange,* 861 F.2d

246, 248 (9th Cir.1988) (court discussed but did not decide the issue because it struck ordinance based on system of exemptions); *contra Burkhart Advertising, Inc. v. Auburn*, 786 F.Supp. 721, 732 (N.D.Ind.1991) (ban on off-premise signs is not content neutral because "[i]t prohibits all kinds of speech because of what it *says*"); *Metromedia, Inc. v. Mayor & City Council of Baltimore*, 538 F.Supp. 1183, 1187 (D.Md. 1982) (identification signs only ordinance was not content neutral because "an owner or occupier within the area may affix a sign identifying his premises but may not affix a sign displaying his ideas or those of others").

The Sixth Circuit, upholding a similar ordinance prohibiting off-premise advertising signs, stated:

> [T]he on-premises/off-premises distinction does not constitute an impermissible regulation of content just because the determination of whether a sign is permitted at a given location is a function of the sign's message. Kentucky, by allowing persons who own or lease property, to have a sign, subject to size and space restrictions, advertising an activity conducted on the property is not favoring one message over another. The state has simply recognized that the right to advertise an activity conducted on-site is inherent in the ownership or lease of the property.

*Wheeler*, 822 F.2d at 591.

■ Having decided that the ordinance is viewpoint neutral, we must next decide if the government's interests justify this regulation of noncommercial speech. Time, place and manner restrictions are permissible if "they are justified without reference to the content of the regulated speech, ... serve a significant governmental interest, and ... leave open ample alternative channels for communication of the information." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346 (1976). In *Vincent, supra,* the Court stated:

> [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of the interest.

*Vincent*, 466 U.S. at 805, 104 S.Ct. at 2128, *quoting United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). Thus, to uphold a viewpoint neutral regulation of speech, a government must show that 1) it has the constitutional power to make the regulation, 2) an important or substantial government interest unrelated to the suppression of free speech is at stake, and 3) the ordinance is narrowly drawn to achieve its desired ends, leaving other channels for the communication of information.

■ It is well settled that the state may legitimately exercise its police powers to advance its aesthetic interests. *Vincent*, 466 U.S. at 805, 104 S.Ct. at 2129. It is also well settled that both traffic safety and aesthetics are substantial governmental goals. *Vincent*, 466 U.S. at 807, 104 S.Ct. at 2130. The Court in *Vincent* also affirmed *Metromedia* as holding that a city's aesthetic interests are sufficiently substantial to provide an acceptable justification for a content neutral prohibition against the use of billboards. *Vincent*, 466 U.S. at 806–07, 104 S.Ct. at 2130.

A government has a more significant interest in the aesthetics of designated historical areas than in other areas. In *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 107–08, 98 S.Ct. 2646, 2651, 57 L.Ed.2d 631 (1978), the Supreme Court recognized that

> These nationwide legislative efforts [to designate historic sites and landmarks] have been precipitated by two concerns. The first is recognition that, in recent years, large numbers of historic structures, landmarks, and areas have been destroyed without adequate consideration of either the values represented therein or the possibility of preserving the destroyed properties for use in eco-

nomically productive ways. The second is a widely shared belief that structures with special historic, cultural, or architectural significance enhance the quality of life for all.

Similarly, Justice Brennan, concurring in *Metromedia*, wrote:

I have little doubt that some jurisdictions will easily carry the burden of proving the substantiality of their interest in aesthetics. For example, the parties acknowledge that a historical community such as Williamsburg, Va. should be able to prove that its interest in aesthetics and historical authenticity are sufficiently important that the First Amendment value attached to billboards must yield. And I would be surprised if the Federal Government had much trouble making the argument that billboards could be entirely banned in Yellowstone National Park, where their very existence would so obviously be inconsistent with the surrounding landscape.

*Metromedia*, 453 U.S. at 533–34, 101 S.Ct. at 2906 (Brennan, J., concurring).

Next, we must also decide whether this ordinance is sufficiently narrowly drawn, and leaves open ample channels of communication of noncommercial messages. Again, we find that it is and does. The ordinance does not apply to the entire city of Douglasville. Off-premise noncommercial signs are allowed in the parts of the city not designated as a historic district. *See Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 53–54, 106 S.Ct. 925, 932, 89 L.Ed.2d 29 (1986) (it was not an unreasonable restriction to have five percent of the entire city's area zoned available for adult movie theatres, as the First Amendment does not guarantee freedom from marketplace competition over commercial sites).

Because a blanket ban on off-premise signs is limited to the historic district of Douglasville, we do not need to decide if a government's interests in traffic safety and aesthetics are an acceptable justification for a city-wide ban of off-premise noncommercial signs. We simply decide that the government's interests in the aesthetics of a designated historic district are sufficiently significant to override the First Amendment rights of a property owner to off-premise noncommercial signs.

2. Other restrictions on off-premise signs

■ Messer also attacks various other limitations on off-premise signs as also favoring commercial over noncommercial speech. *See* note 3, *supra*. Because we find that limitations on off-premise signs are viewpoint neutral, we find the ordinances to be valid time, place and manner regulations. There is absolutely no evidence in the record to show that these ordinances unduly impact noncommercial speech, as Messer argues, or were designed to suppress such noncommercial speech.

B. *The exemptions from the permit requirements*

■ Section 26–17 of the Douglasville sign code exempts five types of signs from permitting requirements and/or permit fees: 1) one wall sign per building side announcing the business and attached to the side of the building, 2) one real estate "for sale" sign per property frontage, 3) one bulletin board located on religious, public, charitable or educational premises, 4) one construction identification sign, and 5) directional traffic signs containing no advertisements.[4] Like the remainder of the

**4. ARTICLE II. PERMITS**

**Sec. 26–16. Permit required.**

No sign shall be erected reconstructed, expanded or replaced without securing a permit from the building official. All nonconforming signs shall be registered with the building official within ninety (90) days of the effective date of this chapter. No permit shall be required for a change of copy on a sign, the customary use of which involves frequent and periodic changes of copy.

**Sec. 26–17. Permit fee not required.**

No permit fee shall be charged for the following types of signs, however, prints or drawings showing location of such signs shall be submitted to the building official. No additional wall signs, real estate sales signs, bulletin boards, or project signs ex-

ordinances discussed *infra,* this ordinance applies city wide.

Messer argues that the ordinance distinguishes between different noncommercial messages, and exempts certain noncommercial messages from permitting requirements based on their content, resulting in an unconstitutional content-based restriction on the noncommercial messages not so exempted. He argues that as the San Diego ordinance in *Metromedia* was struck for its system of exemptions favoring certain types of noncommercial speech over others, so should the Douglasville ordinance be struck.

The *Metromedia* plurality struck the San Diego ordinance because it had a system of exceptions to the general ban on non-commercial billboards which violated the First Amendment.[5] The court held that "[w]ith respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse.... Because some noncommercial messages may be conveyed on billboards throughout the commercial and industrial zones, San Diego must similarly allow billboards conveying other noncommercial messages throughout those zones." *Metromedia,* 453 U.S. at 515, 101 S.Ct. at 2896.

Interpreting *Metromedia* to hold that "an ordinance is invalid if it ... regulates non-commercial billboards based on their content," the Ninth Circuit struck an ordinance because of its system of exemptions from a city wide ban on off-site advertising billboards. *National Advertising Co. v. Orange,* 861 F.2d 246, 248 (9th Cir.1988).[6]

We find that the exemptions in the Douglasville ordinance are distinguishable from the exemptions in the San Diego and Orange ordinances. First, "[l]aws regulating the time, place or manner of speech stand on a different footing from laws prohibiting speech altogether." *Linmark Assocs.*

---

cept as authorized under this section shall be permitted.

(1) A permit must be obtained, but no permit fee shall be charged for one wall sign per building side announcing the business and attached flat to the side of the building. The wall sign(s) shall cover no more than a maximum of twenty-five percent (25%) of the wall surface.

(2) No permit or permit fee shall be required for one real estate "for sale" sign per property frontage that does not exceed twelve (12) square feet in sign area in residential areas or one hundred (100) square feet in sign area in nonresidential districts. No separate "for lease" sign may be displayed except within the sign face of an existing permitted sign or within the window of the building "for lease."

(3) No permit or permit fee shall be required for one bulletin board that does not exceed thirty-two (32) square feet in sign area for public, charitable, educational or religious institutions when the sign is located on the premises of said institution.

(4) No permit or permit fee shall be required for one (1) sign per project location denoting the architect, engineer, contractor or financial institution when placed upon work under construction, alteration or removal that does not exceed fifteen (15) square feet in sign area in residential areas or one hundred (100) square feet in sign area in nonresidential districts. All such signs shall be removed within seven (7) days after substantial completion of the project.

(5) No permit shall be required for signs directing traffic movement onto a premise or within a premise if the direct or sign is under thirty (30) inches high and contains no advertisement.

**5.** The noncommercial signs excepted from the general ban were:

A fixed sign may be used to identify any piece of property and its owner. Any piece of property may carry or display religious symbols, commemorative plaques of recognized historical societies and organizations, signs carrying news items or telling the time or temperature, signs erected in discharge of any governmental function, or temporary political campaign signs. No other noncommercial or ideological signs meeting the structural definition are permitted, regardless of their effect on traffic safety or esthetics.

*Metromedia,* 453 U.S. at 514, 101 S.Ct. at 2896.

**6.** Signs that did not require permits included governmental and utility signs, memorial tablets, some flags, nonelectric signs within recreational facilities which were not visible from any public street, temporary political signs, temporary nonelectric real estate and construction signs, small nonelectric signs within a building, small real estate pennants used for open house activity, small traffic signs and changes on copy signs. *Orange,* 861 F.2d at 248 n. 2.

The Ninth Circuit discussed, but reserved judgment on whether an onsite/offsite distinction between noncommercial messages would be valid. *Orange,* 861 F.2d at 249 n. 3.

*Inc. v. Willingboro*, 431 U.S. 85, 93, 97 S.Ct. 1614, 1618, 52 L.Ed.2d 155 (1977). Unlike the San Diego and City of Orange requirements, the Douglasville exemptions are not exemptions from a general ban of all off-premise billboards, but from permitting requirements and permits fees. Messer has not challenged the *permit process* as an unconstitutional restriction on speech. Thus, the Douglasville sign ordinance stands on a different footing from the complete bans on speech in San Diego and the City of Orange.

Second, these exemptions are much more limited than those in the San Diego or City of Orange ordinances, and do not favor commercial over noncommercial messages, neither do they express a preference between different noncommercial messages. There are no specific exemptions for political, historical, religious, or special event signs. In fact, this ordinance favors noncommercial over commercial messages by expressly *deregulating* messages by noncommercial speakers.

Thus, we hold that the system of exemptions from the permitting process do not violate the First Amendment.

### C. *The temporary permit bond requirements*

■ Section 26–18 of the Douglasville Code authorizes "temporary permits for instructional and political signs to be placed on the streets of the city, ... whereby the public will be directed to a specific place or event or a specific political candidate or political issue." The applicant for such a permit must post a $500 bond to ensure that the signs are removed within 10 days following the event the signs advertise.

Messer argues that this requirement burdens applicants to post political signs with a financial requirement not applicable to others, and thus is a limitation on the fundamental right of political speech. We find no truth in this assertion. The bond requirement burdens all signs regarding events of a temporary nature.

Messer also argues that the regulation is not sufficiently narrowly tailored to pass constitutional muster as other alternatives exist to ensure that temporary signs are removed. However, it is not necessary to pass the least restrictive regulation possible. "[T]he regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward v. Rock Against Racism*, 491 U.S. 781, 800, 109 S.Ct. 2746, 2758, 105 L.Ed.2d 661 (1989). Thus, even if there exists narrower means of achieving the government's purpose, as Messer suggests, because this regulation is not *substantially* broader than necessary, the regulation is upheld.

### D. *The portable display provisions*

■ Portable display signs are "mobile/temporary, electrical or nonelectrical, changeable copy sign[s] ... mounted on a trailer type frame with or without wheels or skids or portable wood or metal frame and not permanently attached to the ground." City of Douglasville, Ga.Code § 26–4. Section 26–8(D)(4) limits the maximum number of portable display signs that can be issued to a business to one temporary permit for every six months, the permit to last for a maximum of sixteen days.

In *Harnish v. Manatee County*, 783 F.2d 1535 (11th Cir.1986), this court held that aesthetics was a substantial government interest and a county's total ban on portable signs was constitutional.[7] In *Don's*

---

7. The *Harnish* court reasoned that *Metromedia, Vincent* and *Clark supra,* stood for three principles:
   1. Aesthetics is a substantial governmental goal which is entitled to and should be accorded weighty respect;
   2. The governmental entity charged with the responsibility of protecting the environment must be given discretion in determining how much protection is necessary and the best method of achieving that protection; and

3. Although any regulation of speech is capable of being narrowed to some extent, the Constitution does not mandate speculation as to how restrictions could be redrafted as long as the restriction is narrowly tailored to achieve the aesthetic goal and alternative means of communication remain available. *Harnish*, 783 F.2d at 1539 (footnote omitted).

**1514**

*Porta Signs, Inc. v. Clearwater,* 829 F.2d 1051 (11th Cir.1987), *cert. denied,* 485 U.S. 981, 108 S.Ct. 1280, 99 L.Ed.2d 491 (1988), this court found that regulations limiting the size and use of portable signs were constitutional as they directly furthered the governmental interest in aesthetics by producing at least a *partial solution* to the government's efforts to reduce visual clutter.

The City of Douglasville has expressed an interest in aesthetics,[8] and has chosen a partial solution by limiting the use of portable signs. Since it could have prohibited *all* portable signs in furtherance of this interest, by allowing a limited number, it is in fact more narrowly tailoring the restrictions to meet its purposes. Thus, the ordinance is constitutional.

We find *Dills v. City of Marietta,* 674 F.2d 1377 (11th Cir.1982), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1873, 76 L.Ed.2d 806 (1983), inapposite to this case. In *Dills,* this court overturned a regulation on portable signs because the city had presented no evidence to support its argument that it had prohibited such signs in the interest of aesthetics. *Dills,* 674 F.2d at 1381.

**E.** *Messer's standing to challenge the variance powers of the Douglasville Board of Appeals and Adjustments*

■ Section 26–10(1) allows for the owner of a proposed sign or his duly authorized agent to appeal from a decision of the building official. Messer challenges the delegation of variance powers to the Board as unconstitutionally vague and broad in violation of due process. To grant a variance, there must be a showing that the application of the ordinance is contrary to the purpose of the code, and that it would result in manifest injustice.

We affirm the district court's holding that Messer does not have standing to challenge the Board of Appeals, as it was not he who had requested and received the hearing. The appeal in this case had been made by the billboard companies Holland and Jimbo, who have since been dismissed from this case with prejudice. Messer has made no attempt at any showing that he requested and was denied a hearing, a variance, or that his individual due process rights were in any way violated. He has not attempted to exhaust his administrative remedies before appealing to this court. *See Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938) ("no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted").

**III. CONCLUSION**

For the foregoing reasons, we AFFIRM the holding of the district court.

---

**8.** Section 26–1 of the Douglasville Code states: In order to protect the public safety, to assure compatibility of signs with surrounding land uses, to enhance the business and economy of the City of Douglasville, to protect the public investment in the streets and highways, to maintain the tranquil environment of residential areas, to promote industry and commerce, to provide an aesthetically appealing environment, and to provide for the orderly and reasonable display of advertising for the benefit of all its citizens, the city council of Douglasville, Georgia, hereby determines that the public health, safety and welfare, and to eliminate visual clutter and blight, require the adoption of this chapter.