ONE WORLD ONE FAMILY NOW, a California nonprofit corporation, Bhaktivedanta Mission, Ltd., a Hawaii nonprofit corporation, and Gregory Scharf, an individual, Plaintiffs,

v.

CITY OF MIAMI BEACH, a Florida municipality, and Richard Barreto, Chief of Police, Defendants.

No. 97–3314–CIV.

United States District Court, S.D. Florida.

Dec. 17, 1997.

1438

Scott S. Liberman, Krupnick, Campbell, Malone, Roselli, Buser & Slama, Fort Lauderdale, FL, David M. Liberman, Los Angeles, CA, for Plaintiffs.

Sheri A. Sack, First Asst. City Atty., Miami Beach, FL, for Defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR INJUNCTIVE RELIEF AND GRANTING FINAL JUDGMENT IN FAVOR OF DEFENDANTS

MORENO, District Judge.

THIS CAUSE came before the Court upon Plaintiffs' Complaint for Declaratory and Injunctive Relief, filed October 17, 1997, and Plaintiffs' Motion for Preliminary Injunction, filed on October 27, 1997. Pursuant to Fed. R.Civ.P. 65(a)(2), the hearing on Plaintiffs' motion for preliminary injunction was consolidated with the trial of the action on the merits. Trial was held on December 4, 1997, with both sides presenting evidence by way of affidavits, photographs, videotapes, and expert reports. The Court has considered all of the evidence submitted and the arguments made by counsel and makes the findings of fact and separate conclusions of law in accordance with Fed.R.Civ.P. 52. Because the Court finds that the Ordinance at issue is a valid, content-neutral time, place, and manner restriction, and thus not violative of the First Amendment, the Court denies Plaintiffs' motion for injunctive relief and grants final judgment in favor of the Defendants.

### Factual Background

After several years of economic decline and increasing crime, in the eighties Miami Beach began experiencing an urban renaissance. Entrepreneurs began to restore the historic art deco buildings and to convert the decaying neighborhoods into popular tourist destinations. In 1995, Miami Beach was named one of the "Great American Places" and the "Hottest Destination in the World." At the heart of the Miami Beach revival has been the restoration of the Art Deco District, which in 1979 was added to the National Register of Historic Places. Specifically, the sidewalk cafes on Ocean Drive between Fifth and Fifteenth Streets have become the economic lifeblood of the City. In a 1996 study, almost twenty percent of the tourists to the Greater Miami area listed the cafe district as their favorite area attraction. See Defs.' Ex. 3. Indeed, the architecture, colors, and style of Ocean Drive and the Art Deco District have come to symbolize the entire City.

Since the addition of the Art Deco District to the National Register of Historic Places, the City has heavily regulated the District to protect its unique architecture and ambiance. Specifically, with the exception of the sidewalk cafes, the City precludes all commercial activity from the streets and sidewalks of the District and subjects the buildings and cafes to an extensive design review process for all physical structures and fixtures associated with them. See Miami Beach Zoning Ordinance 89–2665, §§ 5–7, 18, 19. The cafes and the size, location, and design of the outdoor cafe tables, chairs, and umbrellas are also strictly regulated. See Miami Beach City Code Chapter 39, Article VI. Finally, in addition to the City's regulation of the District, the District itself has its own self-governing body, the Ocean Drive Association, that seeks to preserve and promote the character and aesthetic value of the District.

Recently, the City grew concerned that the increasing use of portable tables to sell items on the western sidewalk of Ocean Drive was interfering with the beauty of the District and the pedestrian traffic flow along the sidewalk. In response, on September 26, 1997, the City enacted Ordinance No. 97–3094, the Non–Profit Vending and Distribution Ordinance ("the Ordinance"). The only activity that the Ordinance regulates is non-profit vending from a portable table. Specifically, the Ordinance provides for five locations within the City where non-profit vending tables may be located: three locations on the east side of Ocean Drive and two locations in the middle of the Lincoln Road Mall. No tables are permitted on the western side of Ocean Drive. Moreover, because the City believes that the use of tables for vending after dark creates greater risk of injury to pedestrians and an increased threat of crime to the vendors, non-profit vending from tables is permitted only between the hours of 8:00 a.m. and sunset. If there are more

than five requests for tables, the table locations are distributed through a quarterly lottery. Non-profit organizations are free to vend or engage in any other First Amendment activity without the use of a table anywhere and at anytime on either side of Ocean Drive, or indeed, in the entire City.

Plaintiffs are two non-profit religious organizations and one individual member, seeking to engage in various First Amendment activities along the public walkways of the Art Deco District. Specifically, through the distribution of message-bearing paraphernalia such as T-shirts in exchange for donations, Plaintiffs seek to educate the public on issues such as global warming, toxic waste, vegetarianism and animal protection, and spiritual ecology. Plaintiffs participated in the first portable table location lottery on October 14, 1997, and were assigned table locations on the east side of Ocean Drive. Plaintiffs contend that by restricting the use of portable tables to the east side of Ocean Drive and by banning all non-profit vending from tables after sunset, the Ordinance violates Plaintiffs' right to free expression guaranteed by the First Amendment.[1] Plaintiffs argue that the distribution of a large number of T-shirts is impractical without the assistance of a table. Moreover, the table locations on the east side of Ocean Drive do not offer the same opportunity to reach the number of people as do locations on the west side. Plaintiffs offer a study indicating that the number of passers-by on the west side of Ocean Drive exceeds that of the east side by a ratio of approximately four to one. Defendants concede that the majority of pedestrians walk along the west side of the street. Moreover, Plaintiffs contend that while the west side pedestrians come to shop and spend money, east side passers-by are frequently biking, jogging, or roller blading and have less time and money to stop and make a donation. Finally, Plaintiffs complain that

the greatest number of pedestrians are present after sunset, the time when the total ban on non-profit vending from tables goes into effect.

### Legal Analysis

**1. Whether Plaintiffs' activity is protected**

Although the sale of message bearing T-shirts may be a constitutionally protected activity, see *Gaudiya Vaishnava Soc. v. San Francisco*, 952 F.2d 1059 (9th Cir.1990); *One World One Family Now v. City of Key West*, 852 F.Supp. 1005 (S.D.Fla.1994), it is not clear that the use of portable tables to conduct the vending of T-shirts also warrants constitutional protection. A split exists among the courts that have addressed the issue. The Seventh Circuit has twice held that the erection of a table is not constitutionally protected speech. *International Caucus of Labor Comms. v. City of Chicago*, 816 F.2d 337, 339 (7th Cir.1987); *International Society for Krishna Consciousness v. Rochford*, 585 F.2d 263, 270 (7th Cir.1978). Another court in this district followed the Seventh Circuit's lead, holding "that the use of tables is not expressive conduct protected by the First Amendment." *International Caucus of Labor Comms. v. Metropolitan Dade County, Fla.*, 724 F.Supp. 917, 920 (S.D.Fla.1989). In *Key West*, 852 F.Supp. at 1009, however, Judge King disagreed, finding that portable tables for selling T-shirts carrying protected speech sufficiently resemble the newsracks that the Eleventh Circuit found to be protected in *Sentinel Communications Co. v. Watts*, 936 F.2d 1189, 1196 (11th Cir.1991).

The Eleventh Circuit in *International Caucus of Labor Committees v. City of Montgomery*, 87 F.3d 1275 (11th Cir.1996), *opinion withdrawn*, 111 F.3d 1548 (11th Cir. 1997), held that "the prohibition against placing any table on a public sidewalk, for what-

---

**1.** Plaintiffs' complaint for injunctive relief also alleges a violation of the Fourteenth Amendment's Equal Protection Clause. However, no evidence was introduced at trial regarding that claim, and no argument was heard on the issue. At any rate, Plaintiffs have not alleged membership in a protected class, and it is clear that their contention that the cafe owners are being favored at the expense of non-profit vendors of expressive materials implicates the First rather than the Fourteenth Amendment.

ever purposes, does not implicate the First Amendment." *Id.* at 1278. A year later, however, the court withdrew its initial opinion in *Montgomery* and replaced it with *International Caucus of Labor Committees v. City of Montgomery,* 111 F.3d 1548 (11th Cir.1997). In the second Montqomery opinion, the court acknowledged that a difference of opinion exists, but did not resolve the issue. Assuming for purposes of the decision that the tables at issue were constitutionally protected, the Court upheld the city's ordinance banning all sidewalk tables as a reasonable time, place, and manner restriction.

Thus, whether the vending of expressive T-shirts from portable sidewalk tables is a constitutionally protected activity remains to be decided by the Eleventh Circuit. This Court need not reach the issue because even assuming that the portable tables are protected, it is clear that the City's Ordinance here is a valid, content-neutral time, place, and manner restriction.

### 2. The constitutionality of the Ordinance

■ The Supreme Court has repeatedly held that public streets and sidewalks are traditional public fora. *Boos v. Barry,* 485 U.S. 312, 318, 108 S.Ct. 1157, 99 L.Ed.2d 333 (1988); *U.S. v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Even within a public forum, however, the State may impose reasonable restrictions on the time, place, and manner of protected speech as long as the restrictions are content-neutral, narrowly tailored to serve a significant government interest, and leave open ample alternative channels for communication. *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Because the Ordinance here does not ban the vending of expressive T-shirts from portable tables outright but merely restricts the hours and locations that such activity can take place, it is properly analyzed as a time, place, and manner restriction. *Cf. City of Renton v. Playtime*

*Theatres, Inc.,* 475 U.S. 41, 46, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (Ordinance that does not ban adult theaters altogether but restricts the areas where such theaters may be located is a time, place, and manner regulation.).

■ The Eleventh Circuit held in *Montgomery* that the total ban on sidewalk tables is a content-neutral restriction. 111 F.3d at 1551. Plaintiffs argue that the Ordinance here is content-based because, unlike *Montgomery,* the City does not impose an outright ban on sidewalk tables. Rather, by selectively permitting the use of tables by restaurants and cafes, and by allowing some forms of First Amendment activity but not others, the City is discriminating against protected expression based on content. This argument goes beyond the content-neutral test. "The principle inquiry in determining content neutrality ... is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward,* 491 U.S. at 791. In other words, content-neutral speech restrictions are "those that 'are *justified* without reference to the content of the regulated speech.'" *Renton,* 475 U.S. at 47 (quoting *Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976)). Certainly this description applies to the Ordinance here. The justifications for the City's restrictions are the preservation of the beauty of the cafe district and the desire to prevent unreasonable congestion of pedestrian traffic. Plainly, neither of these justifications contemplates the content of the regulated expression. The restrictions on nonprofit vending from portable tables treat all expressive activity in the city equally, regardless of content. When the activity is done in conjunction with the use of a portable table, it must be done at selected locations between 8:00 a.m. and sunset; all other means of disseminating protected speech are permitted everywhere at anytime.

In short, Plaintiffs' argument confuses restrictions on the *means* of free expression

with restrictions on its *content*. While the latter raise much graver constitutional concerns and must satisfy more exacting judicial inquiry, the former are proper exercises of legislative discretion, subject to the additional considerations discussed below.

Nor is the Court persuaded by the Plaintiffs' arguments that the Ordinance's favoring of restaurants and cafes at the expense of the vending of expressive T-shirts renders it a content-based regulation. All time, place, and manner restrictions are based in a legislative decision that social concerns justify the curtailment of unfettered expressive activity. That the social concern here is an economic one is immaterial. Certainly a municipality may properly regulate commercial activity in an attempt to bolster the local economy. Inevitably, such regulations impinge on some form of communicative activity. But as long as those regulations restrict those activities without regard to content, are narrowly tailored to serve significant governmental interests, and leave open ample alternative means of communication, the Constitution does not forbid them.

The governmental interests advanced by the City here are significant. The Supreme Court and the Eleventh Circuit have recognized that "[a]esthetics is a substantial governmental goal which is entitled to and should be accorded weighty respect." *Harnish v. Manatee County, Florida*, 783 F.2d 1535, 1539 (11th Cir.1986) (citing *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981); *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984); *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984)). This is so because a city's attempt to preserve the quality of urban life falls well within its broad powers to regulate social welfare. *See Vincent*, 466 U.S. at 805–807. Where, as here, the aesthetics the government is seeking to preserve are those of a designated historical area, the governmental interest is even more compelling. *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 107–08, 98 S.Ct. 2646, 57

L.Ed.2d 631 (1978); *Messer v. City of Douglasville*, 975 F.2d 1505, 1510 (11th Cir.1992).

A city's desire to regulate pedestrian traffic along its sidewalks is also a significant state interest. "[M]unicipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for the movement of people and property, the primary purpose to which the streets are dedicated ." *Schneider v. State of New Jersey*, 308 U.S. 147, 160, 60 S.Ct. 146, 84 L.Ed. 155 (1939). In short, "both traffic safety and aesthetics are substantial governmental goals." *Messer*, 975 F.2d at 1510.

The Plaintiffs contend that while the City's purported interests may be substantial in theory, the Ordinance fails to advance them. Specifically, Plaintiffs argue that the Ocean Drive cafe tables are as unsightly as the portable tables the Ordinance prohibits and contribute to the pedestrian traffic congestion on the sidewalk to a much greater degree than do the vending tables. In support of these claims, Plaintiffs have submitted photographs of the district as well as a pedestrian traffic study that contends that the true cause of the pedestrian traffic congestion is the cafe tables and that the addition of carefully chosen vending tables would not significantly increase that congestion.

The City has responded with its own expert study challenging the Plaintiffs' conclusion. And while both studies are detailed and appear to employ sound methodology and analysis, the Court need not ultimately decide which is more credible. When presenting its interest in regulating pedestrian traffic flow and aesthetics, a city need not convince the court through detailed proof that its regulation is the ideal, most efficient means of achieving the City's ends; rather "the City is 'entitled to advance its interests by arguments based on appeals to common sense and logic.'" *Montgomery*, 111 F.3d at 1551 (quoting *Multimedia Publishing Co. of S. Carolina, Inc. v. Greenville–Spartanburg Airport*, 991 F.2d 154, 160 (4th Cir.1993)). Where these judgments are "not manifestly unreasonable ... [they] should not be set aside." *Metromedia*, 453 U.S. at 509.

■ This policy of judicial restraint makes sense. To second-guess a city's judgment on issues such as traffic and aesthetic regulation is to "trespass[] on one of the most intensely local and specialized of all municipal problems." *Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 109, 69 S.Ct. 463, 93 L.Ed. 533 (1949) (Douglas, J.). In seeking to revitalize Miami Beach, the City was forced to struggle with competing interests. On the one hand, outdoor cafes bring pedestrians. Pedestrians, in turn, bring the money that keeps the local economy thriving. On the other hand, too many pedestrians create unpleasant and unsafe conditions, including the heightened risk of crime and injury. The problem of maintaining a safe flow of pedestrian traffic is further exacerbated by the existence of the outdoor cafes themselves, the very attractions that draw the pedestrians in the first place. Similarly, in its attempts to promote the aesthetics and ambience of the Art Deco District, the City must reconcile the need to preserve the art deco style with the desire to allow local businesses to exploit the economic opportunities that increased tourism brings. Resolving conflicts such as these is the quintessential role of local government, and the courts should not interfere. The judgments that the local authorities reach on these issues are "inevitably subjective, defying objective evaluation." *Metromedia,* 453 U.S. at 510. It would be unfair and improper, then, to demand that these policies be justified with extensive and detailed evidence. Rather, what is required is that the government's judgments be reasonably related to the significant interest being advanced; unless that judgment is "manifestly unreasonable" or "palpably false," it should not be rejected. *Metromedia,* 453 U.S. at 509; *Railway Express,* 336 U.S. 109.

■ The next requirement for a valid time, place, and manner restriction, that the Ordinance be narrowly tailored, is also satisfied. The Plaintiffs argue that the Ordinance here is not narrowly tailored, because the Plaintiffs' study shows that a limited number of portable tables could be located on the west side of Ocean Drive without thwarting the City's stated interests. Again, the Plaintiffs would have the Court improperly supplant its own judgment for that of the City.

■ The Supreme Court has made clear that the requirement that a time, place, and manner restriction be narrowly tailored does not mean that the restriction must be "the least restrictive or least intrusive means" of serving the government's interests. *Ward,* 491 U.S. at 798. "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, ... the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Id.* at 800.

The Ordinance at issue satisfies this requirement. All expressive activity not involving the use of portable tables is permitted at all times and in all places in the city. Moreover, the use of portable tables for non-profit vending has not been banned altogether. Five locations were chosen where vendors have the opportunity to distribute their expressive T-shirts to a large number of pedestrians. That these locations are not ideal from the vendors' point of view does not render the Ordinance invalid. Perhaps it is true that the presence of a limited number of "art deco style" vending tables on the west side of Ocean Drive would not destroy the ambience of the cafe district or significantly increase the traffic congestion. It may also be true that allowing the presence of portable tables after sunset would not result in a substantial increase of injury or crime. But these are precisely the subjective determinations that the Supreme Court has warned the courts to avoid. Like the New York City government that was allowed to determine what volume level was too loud for outdoor concerts in *Ward,* the City of Miami Beach here can, consistent with the other time, place, and manner requirements, determine what structures detract from the beauty of the art deco style and how much pedestrian traffic is too much. Thus, although the Ordi-

nance may not be the least-speech-restrictive means of advancing the City's interests, it does not burden substantially more speech than is necessary. The Court therefore concludes that the Ordinance is narrowly tailored.

█ For the same reasons, it is equally clear that the Ordinance leaves open ample alternative channels for the Plaintiffs to communicate their messages. Under the Ordinance, Plaintiffs are not restricted to vending from the east side of Ocean Drive and the Lincoln Road Mall during the daylight hours. Without the use of a portable table, they may vend their T-shirts anywhere in Miami Beach at any time, including along the more crowded west side of Ocean Drive. They are free to distribute literature explaining their mission, to solicit contributions, and to engage in social and environmental discussions with pedestrians anywhere in the city. In short, they are free to engage in all conceivable First Amendment activity with the exception of the vending of expressive merchandise from portable tables outside of the designated locations. These alternative channels are virtually identical to those that the Eleventh Circuit found sufficient in *Montgomery*. 111 F.3d at 1552 ("In short, only the erection of tables on city sidewalks is proscribed; all other methods of communication are left open. We hold that Montgomery's regulation leaves open ample alternative channels for communication."). As the Supreme Court has stated: "That the city's limitation ... may reduce to some degree the potential audience for the [protected] speech is of no consequence, for there has been no showing that the remaining avenues of communication are inadequate." *Ward,* 491 U.S. at 802.

### Conclusion

Even in a traditional public forum, the freedom of speech guaranteed by the First Amendment is not an absolute freedom to employ the means of expression most likely to convey the protected message to the largest possible audience. If not, we would be overwhelmed by billboards, megaphones, and sound trucks on every street and sidewalk. The government may properly determine when the public welfare warrants restricting the time, place, and manner of protected speech. Certainly, the government's power to enact such restrictions is subject to strong constitutional checks. Regulations must not discriminate based on the speaker's message. Moreover, the regulations must be closely drawn and reasonably designed to advance an important governmental issue. Finally, the regulations must leave the speaker with real alternative means of conveying his message. The City's Ordinance here satisfies all of those conditions. Accordingly, the motion for preliminary injunction is denied, and judgment is entered in favor of the Defendants.