**Ed DILLS, d/b/a Mid-Georgia Supply, Plaintiff-Appellee,**

v.

**The CITY OF MARIETTA, GEORGIA, and Mayor and Council of the City of Marietta, Georgia, Defendants-Appellants.**

**No. 81–7294.**

United States Court of Appeals, Eleventh Circuit.

May 6, 1982.

Roy E. Barnes, Barnes & Browning, P. C., Marietta, Ga., for defendants-appellants.

Charles W. Field, Atlanta, Ga., for plaintiff-appellee.

Before MORGAN, KRAVITCH and HENDERSON, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

On this appeal we are primarily concerned with the constitutionality of restrictions imposed by defendants-appellants, the City of Marietta, Georgia, the city's Mayor and the City Council, (hereinafter defendants) on the use of portable display signs.[1] Plaintiff-appellee Ed Dills, who leases and sells portable trailer signs within the Marietta city limits, filed this action on November 18, 1980 in the Northern District of Georgia. He was later joined as a party plaintiff by James Tucker, a Marietta businessman using portable signs to promote sales of his merchandise. Dills and Tucker (hereinafter plaintiffs) sought declaratory and injunctive relief to prevent defendants from enforcing two provisions of the "Marietta Sign Ordinance" which required the removal of portable display signs after a specified number of days.[2] Plaintiffs chal-

---

1. A "portable display sign" is defined in Marietta's sign ordinances as "[a] mobile, temporary electrical or non-electrical sign that is mounted on skids or portable wood or metal frame and not permanently attached to the ground." City of Marietta Ordinance No. 3479 (enacted March 14, 1979).

2. City of Marietta Ordinance No. 3315 (enacted August 10, 1977) and No. 3479 (enacted March 14, 1979). The regulations of portable signs contained in Ordinance No. 3315 (designated as

lenged the ordinances on grounds that they constituted an unlawful impairment of contract, resulted in deprivation of property without just compensation and otherwise violated their rights of due process, equal protection and free speech. Defendants answered that the suit was precluded under principles of res judicata or collateral estoppel and that the ordinances constituted a lawful exercise of the city's police power. After a hearing, oral arguments by counsel and submission of briefs, the district court granted permanent injunctive relief. The court held that under controlling precedent in this circuit the doctrines of res judicata and collateral estoppel were inapplicable and that the ordinances denied plaintiffs equal protection of the law. For the reasons stated below, we affirm.

I

Initially, we consider defendants' argument that the instant action should be barred under the doctrine of res judicata. On April 12, 1979 several portable sign manufacturers and users filed suit in the Superior Court of Cobb County, CA No. 79–1603, challenging on state and federal constitutional grounds the same two Marietta ordinances attacked here. The state court upheld the constitutionality of the ordinances and that decision was affirmed by the Georgia Supreme Court in *Thomas v. City of Marietta*, 245 Ga. 485, 265 S.E.2d 775 (1980), *cert. denied*, 449 U.S. 839, 101 S.Ct. 115, 66 L.Ed.2d 45 (1981).

Under the doctrine of res judicata a prior valid judgment on the merits operates to bar a subsequent suit on the same cause of action if brought by the same parties or their privies. *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Admitting that plaintiffs Dills and Tucker were not parties to the state court action, defendants argue that we should nevertheless find privity under an expanded view of the doctrine of virtual representation. That doctrine provides that "a person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." *Aerojet General Corp. v. Askew*, 511 F.2d 710, 717 (5th Cir. 1975), *cert. denied*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). In *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978), a panel of the former Fifth Circuit held that the doctrine of virtual representation required "an express or implied legal relationship in which parties to the first suit are accountable to non-parties who file a suit raising identical issues." *Id.* at 1008. The court below found that such a legal relationship did not exist between the plaintiffs in the instant litigation and those in the state court proceedings, and defendants concede that, as limited in *Pollard*, the doctrine of virtual representation cannot be applied here. Defendants therefore ask us to reconsider the

Article II, section 7 in the "Marietta Sign Ordinance") include restrictions on the placement, size, illumination and transportation of portable signs, but plaintiffs only challenge that portion of the ordinance which provides that

A permit shall not be valid for longer than a period of one hundred twenty (120) consecutive days after which time the portable display shall be removed from the building setback lines of the premises. A permit cannot be renewed nor can a permit be obtained for the same premises within a period of thirty (30) days after the removal of a portable display from the building setback area of the premises.

This provision was effectively amended (but remains in the "City Sign Ordinance") by Ordinance No. 3479 adding Article V, paragraph 9. That addition reads as follows:

9. Portable Display Signs are to be permitted only in the following conditions:
   a. Opening or closing of a business, not to exceed thirty (30) days.
   b. Special sale, promotional event, or change of ownership or management, not to exceed twice in any twelve (12) month period,.for a maximum of fifteen (15) days.
   c. Civic, public, charitable, educational or religious events for a maximum of fifteen (15) days, not to exceed twice in any twelve (12) month period.
   d. For traffic direction during road construction or emergency situations.
   e. For political campaigns, for a maximum of thirty (30) days before any election.

principles of privity as articulated in *Pollard*. This avenue is foreclosed to us even should we desire to take it. The decisions of the former Fifth Circuit handed down by that court prior to October 1, 1981 have been adopted as precedent in this circuit. *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206, 1209 (11th Cir. 1981). The Eleventh Circuit has further decided that it should follow "the absolute rule that a prior decision of the circuit (panel or en banc) [can] not be overruled by a panel but only by the court sitting en banc." *Id.* Accordingly, we agree with the district court's conclusion that the doctrine of res judicata does not apply to this action.

## II

Having resolved the procedural issue we turn now to the question of whether the challenged provisions of the Marietta Sign Ordinance violate federal constitutional guarantees. Although plaintiffs assert several constitutional bases for relief, we focus, as did the district court, on plaintiffs' claims based on the First and Fourteenth Amendments. The starting point of our inquiry is to examine the character of the ordinances as they affect constitutionally protected communication.

Both regulations attacked by plaintiffs restrict the time period for use of portable signs: Ordinance No. 3315 permits use of portable signs for up to 120 consecutive days but then requires removal of the sign for 30 days before it may again be displayed, and Ordinance No. 3479 allows use of portable signs only twice a year for a maximum period of 30 days. At a hearing before the district court, plaintiffs presented evidence that portable display signs offered the most economically efficient means of advertising available—i.e. less expensive in relation to effectiveness than any other advertising method. Testimony was introduced to the effect that for a small business with low starting capital permanent signs were not affordable. Plaintiff Dills testified that both ordinances, but especially Ordinance No. 3479, sharply limited the use of portable advertising because short term leases of portable signs were not profitable. The court below therefore concluded that the challenged ordinances impeded plaintiffs' commercial speech.[3] On appeal defendants do not challenge this conclusion, but instead argue that the burdens imposed on commercial speech by the portable sign ordinances were sufficiently justified by the municipality's interests in controlling certain *noncommunicative* aspects of the medium.

The district court dedicated a major portion of its lengthy written order to a discussion of the proper test to be applied in determining the validity of governmental restrictions on commercial speech. That discussion has largely been rendered obsolete by the subsequent decision of the Supreme Court in *Metromedia, Inc. v. San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). In *Metromedia* seven justices expressed approval of that portion of a San Diego ordinance which proscribed use of off-site commercial billboard advertising.[4] In so doing five justices applied the following four part test originally set forth

---

**3.** Ordinances 3315 and 3479 also apply to portable signs carrying noncommercial advertising. Plaintiffs do not, however, challenge the constitutionality of the provisions on this basis.

**4.** In *Metromedia* five separate opinions were entered by members of the Court. Six justices agreed that a San Diego ordinance, which sharply restricted billboard advertising, contravened First Amendment guarantees. The ordinance permitted on-site commercial advertising but forbade all *other* billboard advertising including on-site noncommercial advertising. The four justice plurality (Justices White, Stewart, Marshall and Powell) bifurcated its examination of the ordinance between the pro-

vision's impact on commercial and noncommercial speech. As to its discussion of the regulation of commercial speech, in which the *Central Hudson* test was employed, the plurality was joined by Justice Stevens, who dissented from the resolution of the noncommercial speech issue. Chief Justice Burger and Justice Rehnquist, like Justice Stevens, expressed views that the San Diego ordinance was constitutional as to both the commercial and noncommercial speech aspects. Hence a total of seven justices agreed that San Diego had sufficiently justified a total ban of off-site commercial advertising.

in *Central Hudson Gas v. Public Service Commission of New York*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980):

> (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

453 U.S. at 507, 101 S.Ct. at 2892, 69 L.Ed.2d at 815.

Employing this test in our review of the challenged Marietta ordinances, it is undisputed that the initial, requisite inquiry is fulfilled. The Marietta ordinances clearly encompass speech that is not misleading and that concerns lawful activity. The remaining questions are, however, not so simply answered under the record before us.

■ On appeal, and before the court below, counsel for defendants argued that the two challenged provisions of the Marietta Sign Ordinance were enacted to further the municipality's interests in traffic safety and esthetics. Although it is well settled that substantial governmental interest exists in the promotion of both these concerns, 453 U.S. at 507, 101 S.Ct. at 2892, 69 L.Ed.2d at 815; *Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); *see Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *E. B. Elliott Advertising Co. v. Metropolitan Dade County*, 425 F.2d 1141, 1152 (5th Cir. 1970), there is no support for the claims that city officials were concerned about esthetics when enacting time restrictions on the use of portable signs. The Marietta Sign Ordinance is prefaced by a statement that the purpose of the various sign regulations is "to safeguard life, public health, property and welfare. . . ." Marietta Ordinance No. 3315 (Article I of the Marietta Sign Ordinance). Such broad, all encompassing statements tend to frustrate judicial inquiry into the real purposes of a governmental entity in instituting a restriction on protected activity. They permit after the fact rationalizations for regulations thereby allowing circumvention of the mandate that such measures be defended only on the basis of considerations actually contributing to their enactment. *See Weinberger v. Wiesenfeld*, 420 U.S. 636, 648, 95 S.Ct. 1225, 1233, 43 L.Ed.2d 514 (1975); *see also Califano v. Goldfarb*, 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 115, 96 S.Ct. 1895, 1910, 48 L.Ed.2d 495 (1976); *Deerfield Medical Center v. City of Deerfield Beach*, 661 F.2d 328 (5th Cir. 1981) (former Fifth Circuit opinion). When all-inclusive statements of purpose are used we are forced to look in the record for evidence of the interest underlying a measure. Yet the district court found, and our review of the record confirms, an absence of any evidence that Marietta officials considered portable signs esthetically displeasing. We therefore decline to accept counsel's mere incantation of esthetics as a proper state purpose in evaluating the challenged provisions. *See Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977).

■ Unlike the asserted concern for esthetics, a narrow reading of the general statement of purpose prefacing the Marietta Sign Ordinance as well as the obvious aim of most of the measures contained therein support defendants' arguments that concerns for traffic safety at least partially provoked the restrictions on portable signs. But even accepting that when enacting ordinances 3315 and 3479 city officials sought to implement a substantial governmental interest, we are still unable to conclude that the remaining two requirements of the *Central Hudson* test are met. The time restrictions imposed on the use of portable signs do not directly advance the claimed interest in traffic safety. Defendants introduced testimony by an officer with the City of Marietta Police Department that portable signs constitute a greater distraction to motorists than permanent signs. The officer explained that passersby become accustomed to permanent signs and ignore them

while a portable sign indicated "something —probably a special" and drew attention. Under this reasoning Marietta's time restrictions on the use of portable signs do not directly further the claimed interest in traffic safety. In fact the ordinances' effect would be to exacerbate the distracting quality of portable signs by insuring that when a portable sign was used it indeed advertised something special. Citing *Metromedia* and *E. B. Elliott v. Metropolitan Dade County*, 425 F.2d 1141 (5th Cir. 1970), defendants argue that its allowance of "exceptions" to a total ban on portable sign use does not denigrate the city's interest in traffic safety. While a governmental entity may legitimately decide to remedy a problem on a piecemeal basis, *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1954), at some point exceptions can become so inconsistent with the claimed statutory purpose as to render unreasonable any assertion that the measure furthers the claimed governmental interest. *See, e.g., Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). That point has been reached here.

The Marietta police officer also testified that temporary signs could blow over in severe weather and create an electrical hazard. We again question whether time restrictions on portable sign use address this concern. These doubts are encouraged and the statute at least rendered overinclusive by the application of time restrictions to both electrical and non-electrical temporary signs. Finally, even as to electrical signs the problem can be solved through measures less restrictive of commercial speech, such as requiring anchoring of the signs (a requirement which the record indicates is imposed by other Atlanta area municipalities). Hence we conclude that under the record before us the time restrictions contained in ordinances 3315 and 3479 have not been shown to directly further, or to be narrowly tailored to meet, a claimed substantial governmental interest. The decision of the district court enjoining enforcement of these provisions is

AFFIRMED.