**SUPERSIGN OF BOCA RATON, INC., a Florida Corporation and Barbara Weiss, an individual, Plaintiffs-Appellees,**

v.

**CITY OF FORT LAUDERDALE, a Municipal Corporation, Defendant-Appellant.**

**No. 85–5062**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

July 29, 1985.

Rehearing Denied Aug. 29, 1985.

Thomas J. Ansbro, Jr., Asst. City Atty., Ft. Lauderdale, Fla., for defendant-appellant.

Charles Wender, Boca Raton, Fla., for plaintiffs-appellees.

Before RONEY, FAY and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

The Fort Lauderdale City Commission determined in 1983 to limit the presence of advertising vehicles in the city. Such vehicles, operating in both the streets and waterways of Fort Lauderdale, traveled about displaying the messages of various clients—primarily commercial establishments hoping to attract the patronage of tourists frequenting the local beaches. The ordinance passed by the City Commission expressly prohibited the operation of advertising vehicles or watercraft:

(1) It is unlawful for any person to operate, or cause to be operated, any advertising vehicle or watercraft in or upon any roadway, waterway, marine area, or other public place within the city in which the public has the right of travel. An advertising vehicle or watercraft is any wheeled conveyance or any waterborne craft designed or used for the primary purpose of displaying advertisements.

(2) This section shall not apply to:

(a) Any vehicle or watercraft which displays an advertisement or business notice of its owner, so long as such vehicle or craft is engaged in the usual business or regular work of the owner, and not used merely, mainly or primarily to display advertisements;

(b) Buses; or

(c) Taxicabs.

The preamble to the ordinance stated that it was designed to promote the "safe movement of vehicular and waterborne traffic

and to improve the aesthetic appearance" of the city.

Several months after the passage of this ordinance, Supersign of Boca Raton, Inc., began to operate a fifty-foot vessel off the beaches of Fort Lauderdale. The vessel contained an "electric billboard" that displayed the advertisements of the various commercial clients of Supersign.[1] After the city threatened to prosecute Supersign, the company filed suit in federal district court, alleging that federal law prevented the city from enforcing the ordinance because it conflicted with the First Amendment. The district court found that the ordinance infringed upon commercial speech protected by the First Amendment and enjoined the city from enforcing the statute against Supersign.[2]

 Expression related solely to the economic interests of the speaker and its audience, known as "commercial speech," receives some protection under the First Amendment from unwarranted governmental regulation. Like other forms of expression, the dissemination of economic information furthers an important societal interest. *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 783, 98 S.Ct. 1407, 1419, 55 L.Ed.2d 707 (1978); *Virginia Board of Pharmacy v. Virginia Citizens Consumers Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Yet commercial speech does not receive the same degree of constitutional protection as other forms of constitutionally guaranteed expression, and the former may be forbidden and regulated in situations where the latter may not be. *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983); *Central Hudson*, 447 U.S. at 562–63, 100

S.Ct. at 2349–2350; *Ohralik v. Ohio State Bar Association*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).

 The constitutionality of an ordinance alleged to infringe on commercial speech must be measured under the four-part analysis expounded in *Central Hudson, supra*. First, the court must determine whether the expression is protected by the First Amendment. In order to qualify for protection, commercial speech cannot be misleading and must concern lawful activity. Next the court asks whether the asserted governmental interest is substantial. If the speech is protected and the governmental interest is substantial, the court goes on to determine whether the regulation directly advances the governmental interest asserted and whether a less extensive regulation could serve the purpose. *Id.* 447 U.S. at 566, 100 S.Ct. at 2351.

 The district court obtained positive answers to the first two of these questions and neither party contests those findings. The record does not disclose the use of any misleading advertising or advertisements advocating the performance of illegal acts, nor does the ordinance limit its coverage to that type of speech. *Cf. Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio*, —— U.S. ——, 105 S.Ct. 2265, 85 L.Ed.2d 652 (May 28, 1985). The objectives served by the ordinance, traffic regulation and aesthetic improvement, undoubtedly qualify as substantial governmental interests. *See Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949); *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); *Dills v. City of Marietta, Georgia*, 674 F.2d 1377 (11th Cir.1982); *E.B. Elliott Advertising v. Metropolitan*

---

**1.** Supersign also displays public service and political messages on occasion. The bulk of its clients, however, are commercial entities catering to tourists visiting the city's beaches. The parties agree that the district court was correct to treat the ordinance as a regulation of commercial speech.

**2.** Supersign also alleged that federal legislation preempted the ordinance. The district court did not address this claim but characterized it as "at best, tenuous." Supersign does not now argue preemption as an alternative basis for the judgment below.

*Dade County,* 425 F.2d 1141, 1152 (5th Cir.1970).

As for the third step in the *Central Hudson* analysis, the district court held that the ordinance "provides only ineffective or remote support" for the city's aesthetic and safety concerns because it does not apply equally to all forms of advertisements on vehicles. The ordinance allows advertising by a business on its own vehicles "engaged in the usual business ... of the owner" so long as the vehicle or craft is not used primarily to display advertisements. The district court reasoned that since the identity of the owner of a vessel does not make it any more or less of an aesthetic and safety concern, the ordinance offers at best a "remote solution to the City's problems."

Of course, it is true that the distinction made by the ordinance excludes only one group of advertisements and that the prohibited category poses no more of a threat to aesthetics or traffic safety than the category falling outside the terms of the prohibition. Nevertheless, it does not follow to say that as a result of its incomplete coverage the ordinance does not address the problems of traffic safety or aesthetic improvement. By prohibiting the operation of some advertisement vehicles, the City solves some of its traffic problem and reduces the total number of unsightly advertisements.

Fort Lauderdale does not claim to be regulating every advertisement that affects traffic safety or aesthetics and Supersign is not raising an equal protection challenge to the ordinance. The city may "directly advance" its interests by pursuing a partial solution to its problems, a proposition confirmed by the Supreme Court in *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981). The Court upheld the constitutionality of an ordinance which prohibited the placement of billboards anywhere but where the advertised good or service was manufactured, sold or rendered. While a billboard in front of the owner's store was no less of a traffic hazard or an aesthetic

blot than the same billboard when placed elsewhere, the ordinance did limit the total amount of advertisement and directly advanced the interests of San Diego. Fort Lauderdale has chosen a similarly incomplete but effective means of addressing the same problems. *Cf. Railway Express Agency, Inc. v. New York,* 336 U.S. 106, 69 S.Ct. 463, 93 L.Ed. 533 (1949).

Binding precedents in this Circuit have held that some ordinances regulating advertising were unconstitutional because they did not directly advance the interests of the local government. *Dills v. Cobb County, Georgia,* 755 F.2d 1473 (11th Cir. 1985), *aff'g* 593 F.Supp. 170 (N.D.Ga.1984); *Dills v. City of Marietta, Georgia,* 674 F.2d 1377 (11th Cir.1982). But neither of these cases suggests that the Fort Lauderdale ordinance transgresses on the third part of the *Central Hudson* analysis. The Court in *Dills v. City of Marietta* invalidated an ordinance that placed time restrictions on the number of days that businesses could display portable signs. The city claimed that regulation of portable signs was necessary to promote traffic safety: portable signs drew special attention from motorists since the signs were not always present and were thought to indicate some special offer. The Court concluded that the ordinance did not directly advance the city's interest because by forcing advertisers to remove the signs from the street periodically, the ordinance exacerbated the distracting quality of portable signs. In this case, by contrast, the prohibition of advertising vehicles does not plainly exacerbate the problems identified by the city.

In *Dills v. Cobb County,* the Court considered the constitutionality of an ordinance prohibiting the placement of a portable sign in front of the building setback line. The plaintiff in that case challenged the ordinance as a regulation of all types of speech rather than a restriction on commercial speech alone, 593 F.Supp. at 171–172, meaning that the regulation in that case had to survive more demanding scrutiny than the ordinance enacted by Fort Lauderdale. *See Members of the City Council of*

*Los Angeles v. Taxpayers for Vincent,* —— U.S. ——, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Moreover, Cobb County claimed that it was regulating portable signs because they were the greatest threats to traffic safety and aesthetic values. The ordinance failed to advance the County's interest in solving the worst part of its problems because other types of advertisements posed threats just as great. The Fort Lauderdale ordinance, on the other hand, was designed to reduce the overall amount of advertising on display and it did so by prohibiting the presence of vehicles with no real purpose apart from advertising: Fort Lauderdale singled out the vehicles offering the least costly solution whereas Cobb County had tried to focus on advertising that had created the greatest problems. The district court therefore erred in concluding that the ordinance here did not directly advance the interests of Fort Lauderdale.

The district court also reached an erroneous conclusion under the fourth part of the *Central Hudson* analysis. It found that less restrictive means were available to effectuate the desired goals because the city could have employed time, place and manner restrictions on the operation of advertising vehicles rather than impose an outright ban. Yet *Central Hudson* requires a court to ask whether the governmental interest "could be served *as well* by a more limited restriction on commercial speech." 447 U.S. at 564, 100 S.Ct. at 2350 (emphasis supplied). Examples of such overbroad regulations include attempts by the State to regulate speech that poses no danger to the asserted interest, or complete suppression of information when narrower restriction on expression would serve the interest as well. *Id.* at 565, 100 S.Ct. at 2350. In this case, Fort Lauderdale has not attempted to prohibit any advertising that offers no threat to traffic safety or aesthetic improvement: each advertising vehicle and craft contributes to the problem. The ordinance does not completely suppress information, either. Businesses are free to convey information to the consuming public in Fort Lauderdale through a variety of

means, including buses and taxis. They may also use their own vehicles to advertise so long as the vehicles are primarily used for some other purpose. In short, the city has partially regulated the manner in which information may be conveyed without speaking to the content of that information.

Hence, Fort Lauderdale has chosen an appropriately narrow method of achieving its goals; a more limited regulation, such as a limitation on the type of signs that may be displayed, would not serve the city's goals as well as the current ordinance. The opposite conclusion is foreclosed by the decision in *Metromedia, supra,* where the Court refused to invalidate an ordinance that placed a complete ban on billboards placed in locations other than the advertiser's place of business, with a few exceptions. San Diego was not constitutionally required to choose a measure less stringent than an outright ban on some signs because lesser measures would have been less effective, and the judgment of the city government regarding the effectiveness of various forms of regulation was entitled to some deference:

> If the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them. The city has gone no further than necessary in seeking to meet its ends. Indeed, it has stopped short of fully accomplishing its ends: It has not prohibited all billboards, but allows onsite advertising and some other specifically exempted signs.

453 U.S. at 508, 101 S.Ct. 2893.

Like San Diego, Fort Lauderdale has enacted a partial and content-neutral regulation and has gone no further than necessary to meet its ends. The limited nature of the protection given to commercial speech, along with the four-part analysis of *Central Hudson,* indicates that the defendant has remained within constitutional bounds in its regulation of advertising ve-

hicles. Therefore, the judgment of the district court is REVERSED.