The appellant, David Marsh Walter, appeals from his five convictions for violating two municipal ordinances of the City of Gulf Shores, specifically, two violations of municipal ordinance no. 227, § 2 — "Unlawful to do Business Before Obtaining Required License" — and three violations of municipal ordinance no. 754, § 8-45 — "Commercial Advertising Businesses on Navigable Waters Prohibited." The appellant was ordered to pay a $100 fine on each conviction and was assessed court costs.
The record indicates that the State and the appellant stipulated to the following facts: The appellant, David Marsh Walter, is the owner of a small tugboat to which an electronic sign is affixed. The vessel is named the "Sign Bote," and before June 22, 1998, when municipal ordinance no. 754 was amended to add § 8-45, the appellant was operating a commercial advertising business using the electronic sign on the vessel in the coastal waters of Alabama, approximately 500 yards south of the city limits of Gulf Shores.
On May 15, 1998, before the City of Gulf Shores had amended the ordinance to prohibit advertising on the water, John Morino, the revenue officer for the City of Gulf Shores, mailed the appellant a letter advising him that the City did not allow advertising by boat. The appellant responded, asking for copies of "local or state ordinances, laws, etc. that would prevent . . . [him] from operating on the coastal waters of the Gulf of Mexico near Gulf Shores." The city attorney responded, citing numerous general ordinances dealing with health and safety concerns, including a swimming ordinance, which the City of Gulf Shores adopted from a regulation promulgated by the Alabama Department of Conservation. Although the city attorney invited the appellant to apply for a required municipal occupational business license, the city attorney informed the appellant that an application for a business license for a venture similar to his had been denied in the past.
The appellant applied for the license, and the city council, at its meeting on June 22, 1998, denied the application. After it denied the application, the council suspended its rules to allow for immediate consideration of § 8-45, an amendment to municipal ordinance no. 754. This ordinance is the only ordinance for the City of Gulf Shores that specifically prohibits a form of commercial activity within the "navigable waters of the City." Subsequent to the passage of the amendment to the ordinance, and on the following days — June 23, 1998, through June 30, 1998 — the appellant was cited eight times for the aforementioned violations. The trial court dismissed three violations due to confusion regarding the dates of the alleged violations.
The parties further stipulated that the appellant possessed an occupational license from the State of Alabama, and a general services license from the City of Gulf Shores and that the "Sign Bote" was registered with the Coast Guard, as a vessel regularly moored in Orange Beach, rather than Gulf Shores, Alabama. It was undisputed that the vessel traveled more than 500 yards from shore and that it always stayed seaward from the swimming areas. Additionally, it was undisputed that the vessel did not exhibit lewd or obscene advertising; it did, however, use the words "adult novelties" and "sexy swimwear" in advertising for a store located and licensed in Gulf Shores. There was evidence presented that at least one council member voted against the license because he had received complaints that some of the advertising, promoting "adult toys," was considered offensive by some residents. The *Page 184 
appellant further alleged, and the City did not dispute, that no rule or regulation of the Alabama Department of Conservation prohibits the operation of advertising vessels on navigable waters and that no rule of that Department specifically requires a municipal business license for the operation of such a vessel or specifically prohibits the operation of the vessel on navigable waters without such license.
 I.
The appellant argues that an Alabama municipality may not adopt and enforce ordinances restricting the operation of a vessel on navigable waters if those ordinances differ from state law and regulations of the Alabama Department of Conservation, pursuant to § 33-5-31, Ala. Code 1975.
The reasoning behind the enactment of Chapter 5 of Title 33, Ala. Code 1975, is found in its statement of policy, § 33-5-31, Ala. Code 1975, which provides: "It is the policy of this state to promote safety
for persons and property in and connected with the use, operation and equipment of vessels used on the waters of this state and to promoteuniformity of laws relating thereto." (Emphasis added.)
Section 33-5-31, Ala. Code 1975, provides, in pertinent part:
 "(a) The provisions of this article and rules and regulations promulgated pursuant thereto, and other general laws of this state shall govern the operation, equipment, numbering and all other matters relating thereto whenever any vessel shall be operated on the waters of this state, or when any activity regulated by this article shall take place thereon, but nothing in this chapter shall be construed to prevent the adoption of any ordinance or local law relating to operation of vessels the provisions of which are identical to the provisions of this article, amendments thereto or regulations issued thereunder; provided, that such ordinances or local laws shall be operative only so long as and to the extent that they continue to be identical to provisions of this article, amendments thereto or regulations issued thereunder."
(Emphasis added.)
In reading this statute in para materia with the other provisions of Chapter 5 of Title 33, it is clear that the legislative intent, in requiring local municipalities to pass ordinances that mirror state law, was primarily to promote safety in the registration and operation of vessels upon the navigable waters of this state. Additionally, the adoption ordinances by municipalities or other subdivisions of the state that are identical to state laws ensures uniformity of the laws relating to those safety concerns. A further reading of the statute indicates that the Legislature recognized the ability of subdivisions of the state in enacting ordinances relating to the public welfare to adopt not only the provisions of § 33-5-31, but to use "other general laws" of the state in that regard.
The City argues, and we agree, that "Chapter 5 deals only with `safety issues' related to the use, operation, and equipment of vessels, not with businesses conducted on or with vessels." To accept the appellant's argument that the City is relegated to enacting only laws already in force either by the state or the Department of Conservation is to, in effect, discount the general laws of the state, which provide that cities have the authority, under their police power, to enact regulatory ordinances. Here, the City's regulation of commercial advertising on a vessel within its territorial waters (i.e., one and one-half miles from the edge of the city limits) is not a regulation of the operation of vessels or other activities regulated by Chapter 5 of *Page 185 
Title 33, but is a police-power regulation specifically authorized by the general laws of the state.
As the appellee aptly states in its brief to this Court:
 "Section 11-40-10 of the Code of Alabama mandates that `[o]rdinances of a city or town enforcing police or sanitary regulations and prescribing fines and penalties for violations thereof shall have force and effect in the limits of the city or town and in the police jurisdiction thereof and on any property or rights-of-way belonging to the city or town.' `It is also without dispute that county lines, rivers, and bodies of water constitute no barrier to the exercise of police powers over areas within the general police jurisdiction of a municipality.' Trailway Oil Co. v. City of Mobile, 271 Ala. 218, 221, 122 So.2d 757, 760
(1960).
 "As authorized by Code of Alabama § 11-51-91, the City has enacted police power regulatory ordinances requiring the issuance of a municipal license prior to the conduct[ing] of any business, trade, or profession within the police jurisdiction of the City. Section 11-51-101 of the Code of Alabama expressly recognized the power of a municipality `to license and regulate the use of the streets of the town or city by person who . . . transact business thereon.' Section 24 of the Constitution of Alabama of 1901 provides `[t]hat all navigable waters shall remain forever public highways . . .' and § 33-7-1 of the Code of Alabama provides that `[a]ll navigable waters in this state are public thoroughfares.' `It is hardly necessary to observe that the word `street' is defined as a public highway in city or town, a way with right of use by public for purpose of travel.' Town of Citronelle v. Gulf Oil Corp., 270 Ala. 378, 119 So.2d 180, 183 (1960) quoting Feore v. Trammel, 212 Ala. 325, 328, 102 So. 529, 531 (1924)."
Applying the aforementioned caselaw to the facts of this case, we conclude that the trial court's judgment finding the appellant guilty of the charged violations was correct.
 II.
The appellant argues that the City's requirement that he obtain a municipal occupational license violates federal law. He contends that the City is prohibited by the Commerce Clause from requiring an occupational license for the operation of a federally licensed vessel operating in coastal waters. In support of his argument, he contends that the vessel did not, at any time, touch any land mass that is either part of the corporate limits or the police jurisdiction of the City, and, therefore, that the municipality was without authority to impose a license or fee. He argues that the situation presented here is no different than if the City were attempting to impose a license tax and requirement for every vessel that has traveled for commercial purposes within one and one-half miles of the City's shoreline.
As addressed in Part I of this opinion, the navigable waters within the police jurisdiction of the City of Gulf Shores are a public highway, not private property; hence, the City has absolute police power authority over business activities conducted on those public waters. More importantly, the appellant has presented no evidence that the City's regulation of those business activities has, in any way, interfered with the right of his vessel to transit the waters of the City's police jurisdiction. The City did not challenge the appellant's operation of the vessel, but rather, the operation of the sign on the vessel.
Lastly, the record reveals that the appellant attempted to present facts at trial, *Page 186 
in addition to those stipulated to, indicating that he was doing similar advertising business in the navigable waters of Florida. The trial court disallowed the testimony and found that it was irrelevant to the issues presented here. Because there was no evidence presented indicating that the appellant was engaged in interstate commerce, and no evidence of any discriminatory pattern by the City in issuing municipal occupational licenses, the appellant's argument must fail for lack of merit.
 III.
The appellant argues that the City's passage of the ordinance banning commercial advertising on a vessel in navigable waters violated his rights to equal protection and due process.
The appellant has failed to present any evidence tending to show that his equal protection rights were violated. The record indicates that in 1995 someone submitted a similar application for a license to operate a vessel that would engage in commercial advertising and, when told that his application would probably be denied, he withdrew the application. Moreover, the enactment of municipal ordinance No. 754, § 8-45, is indicative of the fact that no future applicant will be granted a license for such a purpose.
The appellant's argument that the passage of the ordinance violated his substantive due process rights is also unsupported by the record. The appellant argues that none of the general laws of the State that allow municipalities the authority to pass ordinances regulating business operations based upon public health and safety concerns allow for a restriction based upon purely aesthetic reasons.
"The concept of the public welfare is broad and inclusive. The values it represents are spiritual as well as physical, aesthetic as well as monetary." Members of City Council v. Taxpayers for Vincent, 466 U.S. 789,805, 104 S.Ct. 2118, 2129 (1984). While the right of the municipality to enact local ordinances is not unlimited, the ordinance must bear substantial relation to the public health, safety, morals, general welfare, and general convenience of its residents. If the ordinance is debatable, this Court will not substitute its judgment for that of the municipal government body acting in a legislative capacity. See City ofRussellville v. Vulcan Materials Co., 382 So.2d 525 (Ala. 1980)
Because there was evidence presented indicating that the City passed the ordinance to promote and protect the general public welfare within its jurisdiction, and because the appellant has presented no evidence indicating that the City's actions were unreasonable, arbitrary, or capricious in this regard, his due process argument is without merit.
The judgment of the trial court is affirmed.
AFFIRMED.
Baschab, Shaw, and Wise, JJ., concur. Cobb, J., concurs in the result.