PER CURIAM.
David Marsh Walter petitioned this Court for a writ of certiorari to review the Court of Criminal Appeals’ judgment affirming his convictions for five violations of two municipal ordinances of the City of Gulf Shores (hereinafter referred- to as “the City”). Walter v. City of Gulf Shores, 829 So.2d 181 (Ala.Crim.App.2001). The convictions were based upon two violations of municipal ordinance no. 227, § 2, entitled “Unlawful to Do Business Before Obtaining Required License,” and three violations of municipal ordinance no. 754, adding § 8-45, entitled “Commercial Advertising Businesses on Navigable Waters Prohibited,” to the City’s Code of Ordinances. The trial court ordered Walter to pay a $100 fine for each conviction for doing business without a license and a $500 fine for each conviction for advertising on navigable waters and assessed court costs against him. We granted Walter’s petition solely to consider whether the Court of Criminal Appeals correctly decided that the convictions did not violate Walter’s rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution.[1] After reviewing the facts and authority applicable to this issue, we affirm.
The Court of Criminal Appeals set out the pertinent facts of this case:
“The record indicates that the State and [Walter] stipulated to the following facts: The appellant, David Marsh Walter, is the owner of a small tugboat to which an electronic sign is affixed. The vessel is named the ‘Sign Bote,’ and before June 22, 1998, when municipal ordinance no. 754 was amended to add § 8-45, [Walter] was operating a commercial advertising business using the electronic sign on the vessel in the coastal waters of Alabama, approximately 500 yards south of the city limits of Gulf Shores.
“On May 15, 1998, before the City of Gulf Shores had amended the ordinance to prohibit advertising on the water, John Morino, the revenue officer for the City of Gulf Shores, mailed [Walter] a letter advising him that the City did not allow advertising by boat. [Walter] responded, asking for copies of ‘local or *189 state ordinances, laws, etc. that would prevent ... [him] from operating on the coastal waters of the Gulf of Mexico near Gulf Shores.’ The city attorney responded, citing numerous general ordinances dealing with health and safety concerns, including a swimming ordinance, which the City of Gulf Shores adopted from a regulation promulgated by the Alabama Department of Conservation. Although the city attorney invited [Walter] to apply for a required municipal occupational business license, the city attorney informed [Walter] that an application for a business license for a venture similar to his had been denied in the past.
“[Walter] applied for the license, and the city council, at its meeting on June 22,1998, denied the application. After it denied the application, the council suspended its rules to allow for immediate consideration of § 8-45, an amendment to municipal ordinance no. 754. This ordinance is the only ordinance for the City of Gulf Shores that specifically prohibits a form of commercial activity within the ‘navigable waters of the City.’ Subsequent to the passage of the amendment to the ordinance, and on the following days — June 23, 1998, through June 30, 1998 — ’[Walter] was cited eight times for the aforementioned violations. The trial court dismissed three violations due to confusion regarding the dates of the alleged violations.
“The parties further stipulated that [Walter] possessed an occupational license from the State of Alabama, and a general services license from the City of Gulf Shores and that the ‘Sign Bote’ was registered with the Coast Guard, as a vessel regularly moored in Orange Beach, rather than Gulf Shores, Alabama. It was undisputed that the vessel traveled more than 500 yards from shore and that it always stayed seaward from the swimming areas. Additionally it was undisputed that the vessel did not exhibit lewd or obscene advertising; it did, however, use the words ‘adult novelties’ and ‘sexy swimwear’ in advertising for a store located and licensed in Gulf Shores. There was evidence presented that at least one council member voted against the license because he had received complaints that some of the advertising, promoting ‘adult toys,’ was considered offensive by some residents. [Walter] further alleged, and the City did not dispute, that no rule or regulation of the Alabama Department of Conservation prohibits the operation of advertising vessels on navigable waters and that no rule of that Department specifically requires a municipal business license for the operation of such a vessel or specifically prohibits the operation of the vessel on navigable waters without such license.”
829 So.2d at 183-84.
Walter argues that his convictions violated his constitutional rights because, he says, the City acted unreasonably, arbitrarily, and capriciously by adopting the ordinance banning commercial advertising, which, he argues, restricts commercial speech. In considering this argument, the Court of Criminal Appeals stated:
“[Walter’s] argument that the passage of the ordinance violated his substantive due process rights is also unsupported by the record. [Walter] argues that none of the general laws of the State that allow municipalities the authority to pass ordinances regulating business operations based upon public health and safety concerns allow for a restriction based upon purely aesthetic reasons.
“ ‘The concept of public welfare is broad and inclusive. The values it represents are spiritual as well as physical, *190 aesthetic as well as monetary.’ Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 805, 104 S.Ct. 2118, 2129, 80 L.Ed.2d 772 -(1984). While the right of the municipality to enact local ordinances is not unlimited, the ordinance must bear substantial relation to the public health, safety, morals, general welfare, and general convenience of its residents. If the ordinance is debatable, this Court will not substitute its judgment for that of the municipal government body acting in a legislative capacity. See City of Russellville v. Vulcan Materials Co., 382 So.2d 525 (Ala.1980).
“Because there was evidence presented indicating that the City passed the ordinance to promote and protect the general public welfare within its jurisdiction, and because [Walter] has presented no evidence indicating that the City’s actions were unreasonable, arbitrary or capricious in this regard, his due process argument is without merit.”
829 So.2d at 186 (emphasis added).
We agree that Walter’s advertising activities constitute commercial speech, defined as “expression related solely to the economic interests of the speaker and its audience.” Central Hudson Gas & Elec. Corp. v. Public Serv. Comm’n, 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (citing Virginia Pharmacy Bd. v. Virginia Citizens Consumer Council, 425 U.S. 748, 762, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); Bates v. State Bar of Arizona, 433 U.S. 350, 363-64, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); Friedman v. Rogers, 440 U.S. 1,11, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979)).
“The First Amendment, as applied to the States through the Fourteenth Amendment, protects commercial speech from unwarranted governmental regulation. Virginia Pharmacy Board, 425 U.S., at 761-762, 96 S.Ct. 1817. Commercial expression not only serves the economic interest of the speaker, but also assists consumers and furthers the societal interest in the fullest possible dissemination of information. In applying the First Amendment to this area, we have rejected the ‘highly paternalistic’ view that government has complete power to suppress or regulate commercial speech. ‘[Pjeople will perceive their own best interests if only they are well enough informed, and ... the best means to that end is to open the channels of communication, rather than to close them.... ’ Id., at 770, 96 S.Ct. 1817; see Linmark Associates, Inc. v. Willingboro, 431 U.S. 85, 92, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977)....
[[Image here]]
“The First Amendment’s concern for commercial speech is based on the informational function of advertising. See First National Bank of Boston v. Bellotti, 435 U.S. 765, 783, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Consequently, there can be. no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity....
“If the communication is neither misleading nor related to unlawful activity, the government’s power is more circumscribed. The State must assert a substantial interest to be achieved by restrictions on commercial speech. Moreover, the regulatory technique must be in proportion to that interest. The limitation on expression must be designed carefully to achieve the State’s goal. Compliance with this ‘requirement may be measured by two criteria. First, the restriction must directly advance the state interest involved; the regulation may not be sustained if it provides only ineffective or remote sup *191 port for the government’s purpose. Second, if the governmental interest could be served as well by a more limited restriction on commercial speech, the excessive restrictions cannot survive.”
Central Hudson Gas, 447 U.S. at 561-64, 100 S.Ct. 2343 (emphasis added).
Walter also argues that the Court of Criminal Appeals erred in requiring that he had the burden of proving that the City’s passage of the ordinance prohibiting commercial advertising violated his constitutional rights. Walter argues that such a requirement conflicts with Edenfield v. Fane, 507 U.S. 761, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993); in that case the Supreme Court, in pertinent part, stated:
“It is well established that ‘[tjhe party seeking to uphold a restriction on commercial speech carries the burden of justifying it.’ Bolger v. Youngs Drug Products Corp., 463 U.S. 60, 71, n. 20, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983); [Board of Trustees of State University of New York v.] Fox, 492 U.S. [469], at 480, 109 S.Ct. 3028, 106 L.Ed.2d 388 [ (1989) ]. This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree. See, e.g., Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 648-649, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); Bolger, supra, at 73, 103 S.Ct. 2875; In re R.M.J., 455 U.S. [191], at 205-206, 102 S.Ct. 929, 71 L.Ed.2d 64 [(1982)]; Central Hudson Gas & Electric Corp. [v. Public Serv. Comm’n, 447 U.S. 557, 569, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)]; Friedman v. Rogers, 440 U.S. at 13-15, 99 S.Ct. 887; Linmark Associates, Inc. v. Willingboro, 431 U.S. 85, 95, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977). Without this requirement, a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression.”
507 U.S. at 770-71, 113 S.Ct. 1792 (emphasis added).
Although the City did not offer testimony attempting to justify passage of the ordinance banning commercial advertising in its navigable waters, a transcript of the city council meeting in which the ordinance was passed was admitted into evidence. That transcript states, in pertinent part:
“The Mayor presented the Application for Business License of David Walter, dba The Sign Bote, for advertising with an electronic sign on a vessel in the waters of the Gulf of Mexico.
“The Mayor asked if Mr. Walter wished to address the Council on this matter. Mr. Walter stated he would reserve his comments until such time as the Ordinance prohibiting commercial advertising businesses on the navigable waters of the City was discussed.
“Mayor Bodenhamer stated that the City had received a business license application for this type operation approximately three years ago[,] which was denied. It requires Council action in that there is no category for this type license. After denial of the previous application, the Council did not implement any legislation to prohibit such activities. If the Council does approve the license application of Mr. Walter, then the Ordinance to which he referred would not be considered. The Council was advised of the presence of the City Attorney if there were questions.
“Councilman Harris introduced and moved for the adoption of the following Resolution:
*192 “RESOLUTION NO. 2731-98
“A RESOLUTION DENYING APPLICATION OF DAVID WALTER, DBA THE SIGN BOTE, FOR BUSINESS LICENSE
“BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF GULF SHORES, ALABAMA, WHILE IN REGULAR SESSION ON JUNE 22, 1998, as follows:
“Section 1. That the attached application of David Walter, doing business as The Sign Bote, dated June 10, 1998, for a license to engage in ‘advertising with electronic sign on vessel’ having been referred to the City Council of Gulf Shores under Section 8-5 of the Code of Ordinances, it is hereby RESOLVED by the City Council of Gulf Shores' that the application be, and it is hereby, DENIED. The denial is deemed to be-in the interests of the public welfare and is based on the City’s powers to regulate businesses, to prevent injury or annoyance to the public, and to regulate the use of the streets of the City, including the navigable waters[,] as public highways and public thoroughfares within its jurisdiction, for the transaction of business under sections 11-51-90, 11-51-91, 11-47-117, 11-51-101, and 33-7-1 of the Code of Alabama and Section 24 of the Constitution of Alabama.
“Section 2. That this Resolution shall become effective upon its adoption.
[[Image here]]
“The motion for the adoption of Resolution No. 2731-98 was seconded by Councilman Miceli; was regularly put; was discussed and considered in full by the Council; and upon the question, the vote thereon was as follows: Councilman Hanzlik, ‘aye,’ Councilman Harris, ‘aye,’ Councilman Duke, ‘aye,’ Councilman Kaiser, ‘aye,’ Councilman Miceli,- ‘aye,’ and Mayor Bodenhamer, ‘aye.’ Whereupon, the Mayor declared Resolution No. 2731-98 duly and legally adopted. “Mayor Bodenhamer asked if there was anyone present who wished to address the Council but had been unable to get on the formal agenda.
“An unidentified gentleman, who stated he advertised on The Sign Bote and also worked for Mr. Walter, requested the reasons for Council’s] denial of the license application.
“The Mayor stated he personally voted to deny the license as this type activity was not something he felt the public desired to see off the beaches of Gulf Shores. He further stated he had not personally, seen The Sign Bote in operation!;] however!,] calls had been received at City Hall with regard to some advertising that was considered offensive by the callers. The Mayor stated he felt if this type activity were licensed it could lead to more like business license applications being submitted to the City[] which could create a carnival-type atmosphere.
“Councilman Duke stated he agreed with the Mayor. He stated he could foresee at some point in the future that many more applications of this type could be filed with the City.
[[Image here]]
“Mayor Bodenhamer read in its entirety the proposed Ordinance prohibiting the conduct of commercial advertising businesses on the navigable waters of the City.
“David Walter addressed the Council relative to legal research he has done in support of his business being licensed to operate in the Gulf of Mexico. Mr. Walter stated he was aware the City does not want him to operate; that he has a valid business license with the City; that *193 the City is in violation of state law by not providing services in the entire police jurisdiction; that the City is negligent in not providing services in the Gulf of Mexico; that the City cannot deny his operation in that he is licensed by the State of Alabama for advertising; that the City should be licensing all vessels passing through its police jurisdiction. Mr. Walter asked the Mayor what particular ad he was referring to as being offensive. He stated he felt the City was trying to put him out of business because of the Christian content of his ads.
“The Mayor stated he had not seen The Sign Bote in operation[;] however[,] calls were received at City Hall in this regard.
“Councilman Miceli stated he had personally observed The Sign Bote displaying an ad for sexy lingerie and adult novelty toys, which he felt was offensive. Councilman Miceli further stated this was why he voted against the business license being issued.
“Mr. Walter questioned if the referenced business had a license for operation in the City.
“Councilman Miceli stated it did.
“Mr. Walter then asked if this was offensive why were they allowed to operate a business.
“Councilman Miceli stated that they were in a fixed location and not allowed to go up and down advertising.
“At the invitation of Mayor Bodenhamer, Donald Stewart, City Attorney, provided legal comments in rebuttal of Mr. Walter’s statements.
“Councilman Miceli moved for unanimous consent of the Council to suspend the rules of procedure to allow for the immediate consideration of the following Ordinance:
“ORDINANCE NO. 754
“AN ORDINANCE TO AMEND THE CODE OF ORDINANCES, ADOPTED JULY 24, 1989, AT CHAPTER 8, BUSINESS LICENSES, TAXES, AND REGULATIONS, BY ADDING SECTION 8-45, PROHIBITING THE CONDUCT OF COMMERCIAL ADVERTISING BUSINESSES ON THE NAVIGABLE WATERS OF THE CITY
“WHEREAS, the City Council has heretofore determined that the licensing of the business of commercial advertising by means of electronic and other signage devices on vessels within the navigable waters of the City and its police jurisdiction would be contrary to the public welfare and a failure by the City to prevent the creation of a public nuisance and to properly regulate the use of public highways and thoroughfares for the transaction of business; and
“WHEREAS, the City Council has determined that the City’s policy of prohibiting such business activities should be confirmed and memorialized in the form of an ordinance under the authority conferred on the City under Sections 11-51-90, 11-51-91, 11-47-117, 11-51-101, and 33-7-1 of the Code of Alabama and Section 24 of the Constitution of Alabama;
“NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF GULF SHORES, ALABAMA, WHILE IN REGULAR SESSION ON JUNE 22, 1998, as follows:
“Section 1. That Chapter 8, Business Licenses, Taxes, and Regulations, of the City’s Code of Ordinances, adopted July *194 24, 1989, be and it is hereby amended by the addition of Section 8-45 reading in its entirety as follows:
“ ‘CHAPTER 8 BUSINESS LICENSES, TAXES AND REGULATIONS
“ ‘ARTICLE I. IN GENERAL
“ ‘8-45 Commercial Advertising Businesses on Navigable Waters Prohibited.
“ ‘No person shall engage in the business of displaying or operating any commercial advertising device, including, without limitation, an electronic sign board, on any vessel or fixed structure on the navigable waters located within the corporate limits or police jurisdiction of the City of Gulf Shores.’
“Section 2. That this Ordinance shall become effective upon its adoption and publication as required by law.
“The motion for unanimous consent was seconded by Councilman Duke; and upon the question, the vote thereon was as follows: Councilman Hanzlik, ‘aye,’ Councilman Harris, ‘aye,’ Councilman Duke, ‘aye,’ Councilman Kaiser, ‘aye,’ Councilman Miceli, ‘aye’, and Mayor Bo-denhamer, ‘aye.’ Mayor Bodenhamer then declared the rules suspended. “Councilman Miceli then moved for the adoption of Ordinance No. 754 and to waive the reading of said Ordinance at length. The motion for the adoption of Ordinance No. 754 was seconded by Councilman Duke; was regularly put; was discussed and considered in full by the Council; and upon the question, the vote thereon was as follows: Councilman Hanzlik, ‘aye,’ Councilman Harris, ‘aye,’ Councilman Duke, ‘aye,’ Councilman Kaiser, ‘aye,’ Councilman Miceli, ‘aye’, and Mayor Bodenhamer, ‘aye.’ Whereupon, the Mayor declared Ordinance No. 754.duly and legally adopted.
“Mr. Walter stated he only saw one course of action he could take which would be to commit an act of civil disobedience and operate his business. He suggested that the City secure the second opinion of a competent legal advisor before proceeding.
“Mayor Bodenhamer advised Mr. Walter that the City has in this meeting denied his application for a business license!;] thus[,] he will not be allowed to operate The Sign Bote in the City’s jurisdiction. The Mayor added that if Mr. Walter so chooses to operate this business, appropriate action will be taken by the City.”
(Emphasis added.)
The City presented evidence indicating that the purpose of the ordinance it passed was to promote and protect the general public welfare within its jurisdiction. Walter has presented no evidence indicating that the City’s actions were unreasonable, arbitrary, or capricious.
An ordinance prohibiting “any advertising vehicle or watercraft in or upon any roadway, waterway, marine area, or other public place within the city in which the public has-the- right of travel” was upheld against a constitutional challenge in Supersign of Boca Raton, Inc. v. City of Fort Lauderdale, 766 F.2d 1528, 1529 (11th Cir.1985). We recognize that the Gulf Shores ordinance is narrower in scope than the ordinance being challenged in Supersign in that it does not apply to roadways.
The court in Supersign described a four-part Central Hudson Gas-based analysis: First, “whether the expression is protected by the First Amendment”; second, “whether the asserted governmental interest is substantial”; and, assuming positive answers to the first two questions, *195 then “whether the regulation directly advances the governmental interest asserted”; and finally “whether a less extensive regulation could serve the purpose.” 766 F.2d at 1530.
Here, as was the case in Supersign, the answer to the first two questions is in the affirmative. Commercial speech is protected. However, as the court noted in Supersign, “commercial speech does not receive the same degree of constitutional protection as other forms of constitutionally guaranteed expression, and the former may be forbidden and regulated in situations where the latter may not be.” Id. at 1530, citing Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983); Central Hudson Gas, 447 U.S. at 562-63, 100 S.Ct. 2343; and Ohralik v. Ohio State Bar Ass’n, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978).
The objective of aesthetic improvement undoubtedly qualifies as a substantial governmental interest. See Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 805, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984) (“It is well settled that the state may legitimately exercise its police powers to advance esthetic values.”). See also Supersign, 766 F.2d at 1530. A city’s interest in avoiding visual clutter is sufficient to justify a prohibition against billboards. Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981).
The City of Gulf Shores is situated, as the name suggests, on the Gulf of Mexico, and the aesthetic value of preserving the natural beauty of that coastline for a city heavily dependent on tourism cannot be overstated. Barring waterborne signage to avoid creating “a carnival-type atmosphere” is a permissible exercise of the City’s police power; therefore, the answer to the third question, whether the regulation directly advances the governmental interest asserted, is in the affirmative.
It is difficult to envision a narrower ban on waterfront advertising that would effectively avoid the creation of the conduct condemned by the city as a “public nuisance.” As the court noted in Supersign, “In this case, Fort Lauderdale has not attempted to prohibit any advertising that offers no threat to traffic safety or aesthetic improvement: each advertising vehicle and craft contributes to the problem.” 766 F.2d at 1532. As the court also noted in Supersign, in Metromedia, Inc. v. San Diego, the city “was not constitutionally required to choose a measure less stringent than an outright ban on some signs because lesser measures would have been less effective, and the judgment of the city government regarding the effectiveness of various forms of regulation was entitled to some deference.” Id.
In passing ordinance no. 754 to prohibit commercial advertising on its navigable waterways, Gulf Shores has remained within constitutional limits. Therefore, we affirm the judgment of the Court of Criminal Appeals affirming Walter’s convictions for violating the municipal ordinances.
AFFIRMED.
MOORE, C.J., and HOUSTON, LYONS, BROWN, and STUART, JJ„ concur.
SEE, JOHNSTONE, HARWOOD, and WOODALL, JJ., dissent.

. We do not review here Walter's argument that the convictions violated the Commerce Clause of the United States Constitution, Art. I, § 8, Cl. 3.